DA 12-0080

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 246

B BAR J RANCH, LLC,

       Plaintiff and Appellant,

  v.

CARLISLE WIDE PLANK FLOORS, INC.,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DV 08-37
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Christian T. Nygren, W. Adam Duerk; Milodragovich, Dale,
Steinbrenner & Nygren, PC, Missoula, Montana

      For Appellee:

          David B. Cotner, Joslin E. Monahan; Datsopoulos, MacDonald
& Lind, Missoula, Montana

                    Submitted on Briefs:  August 29, 2012

                            Decided:  October 30, 2012

Filed:

_____
                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     B Bar J Ranch, LLC (B Bar J) appeals from the judgment against it in favor of Carlisle Wide Plank Floors, Inc., (Carlisle) from the District Court for the Fourth Judicial District, Mineral County.  We affirm.

¶2     B Bar J presents the following issues for review:

¶3     *Issue One:  Whether the District Court erred by allowing Carlisle to disclose an expert witness after the scheduling order deadline.*

¶4     *Issue Two:  Whether the District Court erred by awarding Carlisle attorney fees under the Montana Consumer Protection Act.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     B Bar J owns and operates a 680-acre ranch located in the Lolo National Forest near Tarkio, Montana.  The ranch's defining feature is its 18,000 square-foot lodge that boasts ten bedrooms, a full commercial kitchen, a conference room, a massage room, and a saloon.  Carlisle is a custom manufacturer of high-end wide-plank wood flooring. While building the lodge in 2005, B Bar J bought roughly 6,000 square feet of wood flooring from Carlisle.  After being installed, approximately 2,000 square-feet of the Carlisle flooring in the basement started buckling and had to be replaced with an alternative product.

¶6     B Bar J sued Carlisle in May of 2008, alleging negligent misrepresentation, breach of an implied warranty of suitability for a particular purpose, and violation of the Montana Unfair Trade Practices and Consumer Protection Act, §§ 30-14-101 et seq.,

2

MCA (MCPA). In April 2009, Carlisle joined B Bar J's general contractor who built the lodge and the subcontractor who installed the flooring as third-party defendants. In its scheduling order, the District Court set December 15, 2010, as the deadline for disclosing expert witnesses and February 1, 2011, as the deadline for discovery. In February of 2011, Carlisle moved the court to disclose an accountant as a tax expert for trial. The District Court granted Carlisle's motion over B Bar J's objection on March 1, 2011. B Bar J settled its claims against the general contractor and subcontractor, but it proceeded to trial against Carlisle on March 21, 2011.

¶7 One of the issues at trial was whether B Bar J met the statutory definition of a consumer under the MCPA. For B Bar J to be a consumer under the MCPA, the lodge had to be used primarily for personal, family, or household purposes. If, instead, the jury found that B Bar J had used the lodge for business purposes, then it would not be a consumer under the MCPA and its claim would fail.

¶8 B Bar J presented four witnesses who testified that B Bar J's sole owner and member, Michael Borden, had used the lodge primarily as a second residence. In response, Carlisle introduced B Bar J's tax returns and accounting records into evidence, and had Craig Langel, its tax expert, explain how the records indicated that B Bar J treated the lodge as a business asset for tax purposes and not as a personal residence. Among other things, Langel explained to the jury how B Bar J had reported income from use of the lodge, had reported the lodge as a depreciable asset, and had taken specific business deductions on the lodge that are not allowed for personal residences. He then

3

explained how B Bar J's tax returns should have been completed had the lodge been used as either a full-time or part-time personal residence.

¶9 The jury returned a verdict in Carlisle's favor on all of B Bar J's claims on March 28, 2011, including a 12-0 verdict on the MCPA claim. After successfully defending against all of B Bar J's claims, Carlisle moved the District Court for an award of attorney fees as the prevailing party under the MCPA, which the court granted. B Bar J now appeals the District Court's order that allowed Carlisle to disclose Langel as an expert witness after the scheduling order deadline and the order awarding Carlisle attorney fees.

## STANDARD OF REVIEW

¶10 We review both a district court's evidentiary rulings and award of attorney fees for an abuse of discretion. *Mason v. Ditzel*, 255 Mont. 364, 370-371, 842 P.2d 707, 712 (1992); *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 12, 327 Mont. 146, 112 P.3d 1018. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Tripp*, ¶ 12.

## DISCUSSION

¶11 *Issue One: Whether the District Court erred by allowing Carlisle to disclose an expert witness after the scheduling order deadline.*

¶12 B Bar J argues on appeal that the District Court abused its discretion by allowing Carlisle to disclose Langel as an expert witness after the scheduling order deadline because Carlisle's failure to comply with the scheduling order was a result of its own procrastination. B Bar J contends that because Carlisle first knew that it was interested in

4

the tax records as early as October of 2008, it should have disclosed a tax expert before receiving the records. The District Court considered a similar argument that B Bar J's counsel made at the March 1, 2011, final pretrial conference but reasoned that Carlisle could not have known that it would need a tax expert until after it received the tax returns. Because B Bar J did not produce the tax returns until February 2, 2011, well after the deadline to disclose expert witnesses, the court allowed Carlisle's late disclosure and permitted Langel to testify at trial. Alternatively, B Bar J argues that Carlisle should have taken additional measures to make sure that it obtained the records before the deadline for disclosing experts.

¶13 The court's decision to permit the late disclosure is an evidentiary ruling that we review for an abuse of discretion. *Mason*, 255 Mont. at 371, 842 P.2d at 712. District courts have the authority to control trial administration and inherent discretionary power to control discovery. *Anderson v. Werner Enters., Inc.*, 1998 MT 333, ¶ 13, 292 Mont. 284, 972 P.2d 806. Montana Rule of Civil Procedure 16(b) provides that a district court's scheduling order can only be modified with leave from the judge and for good cause. Therefore, the question before us is whether the District Court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason when it determined that Carlisle had good cause to modify the scheduling order. We hold that it did not.

¶14 As the District Court recognized, Carlisle undoubtedly needed the tax records before it could have determined whether a tax expert would be necessary at trial. Although the tax returns supported Carlisle's theory that B Bar J was not a consumer,

5

they could have also disproved that theory. It was only after reviewing the returns that Carlisle knew for sure that it needed a tax expert to testify at trial. B Bar J argues, however, that it was Carlisle's own fault that it did not receive the tax records in a timely fashion. Our review of the record reveals otherwise. Carlisle first sought production of the tax records in October of 2010. At that time, B Bar J refused to produce the records and claimed that they were irrelevant. The next time Carlisle requested the records was in a letter that it sent to B Bar J's counsel on November 18, 2010. In that letter, sent nearly a month before the deadline to disclose experts, Carlisle's counsel explained that the tax records were directly relevant to its MCPA claim defense. But B Bar J again refused to produce the records and continued to insist that they were irrelevant. Carlisle was consequently forced to seek the District Court's assistance, which it received on January 27, 2011, when the court compelled production of the tax returns. That order came well after the deadline to disclose expert witnesses.

¶15 B Bar J now asks us to penalize Carlisle for its own delay producing the tax returns. Although Carlisle could have been more diligent in its attempt to obtain the records, B Bar J knew what the records revealed and still claimed that they were irrelevant. Moreover, B Bar J continued to insist that the records were irrelevant even after Carlisle's counsel explicitly explained how they pertained to its defense, and it was B Bar J that forced Carlisle to obtain a court order compelling production. We will not now allow B Bar J to benefit from a situation that it had no small role in creating. Carlisle would have had plenty of time to meet the court's scheduling order deadline if B Bar J had produced the records following either of Carlisle's requests. Because B Bar J

did not disclose the clearly relevant tax records until after the deadline to disclose expert witnesses, the District Court did not abuse its discretion when it found good cause to amend the scheduling order to allow Carlisle's late disclosure of Langel as an expert witness.

¶16    *Issue Two: Whether the District Court erred by awarding Carlisle attorney fees under the Montana Consumer Protection Act.*

¶17    B Bar J argues that the District Court erred by disregarding the heightened standard for awarding defendants attorney fees under the MCPA. Section 30-14-133(3), MCA, allows a district court to award attorney fees to a party that successfully prosecutes or defends against an MCPA claim. B Bar J correctly asserts that the MCPA was designed to protect consumers and thus has a preference for protecting the monetary interests of plaintiffs, and that the defendant in an action under the MCPA is afforded less protection than the plaintiff. Accordingly, we have held that a defendant may only be awarded attorney fees under the MCPA upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Tripp*, ¶ 37.

¶18    B Bar J is incorrect, however, to the extent that it argues that the policy of protecting consumers' monetary interests imposes an additional burden on prevailing defendants seeking attorney fees. The policy of protecting consumers' monetary interests is embodied in the heightened standard that we have adopted; it is not an additional burden in and of itself. Here, the District Court found that B Bar J's MCPA claim was "in the very least, unreasonable, without foundation, and perhaps frivolous . . . ." It

properly applied the *Tripp* standard and did not disregard the heightened standard when it awarded Carlisle attorney fees.

¶19     Lastly, B Bar J argues that the District Court applied hindsight reasoning to justify Carlisle's attorney fee award.  In *Harmon v. Fiscus Realty, Inc.*, we noted that the *Tripp* standard requires more than the plaintiff simply losing its case, and that "a district court must not engage in hindsight reasoning as to the merits of a case that would 'discourage all but the most airtight claims.'"  2011 MT 232, ¶ 9, 362 Mont. 135, 261 P.3d 1031 (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S. Ct. 694, 700 (1978)).  B Bar J contends that the District Court engaged in such hindsight reasoning because it denied Carlisle's motion for partial summary judgment on the MCPA claim before trial, and also denied its motion for a directed verdict on the MCPA claim after B Bar J rested its case-in-chief.  B Bar J points to comments that the District Court judge made when denying Carlisle's motion for a directed verdict that the question of whether the lodge was used primarily for personal or business purposes was a "fairly tough question" to show that the judge improperly based his decision to award Carlisle attorney fees on hindsight reasoning.

¶20     B Bar J's argument fails to acknowledge, however, that the District Court did not have the benefit of hearing Langel's testimony that explained the tax returns and accounting records, nor had it seen the accounting records before it denied Carlisle's motion for partial summary judgment or its motion for a directed verdict.  As the District Court noted in its order awarding attorney fees, Langel's testimony along with the accounting records and tax returns, abolished B Bar J's claims that it was a consumer

under the MCPA. Our prohibition against hindsight reasoning does not mean that a case is not frivolous, unreasonable, or without foundation simply because there is a question of fact. The District Court did not engage in hindsight reasoning just because it relied on evidence that Carlisle produced in its case-in-chief to justify awarding it attorney fees.

¶21 The District Court properly determined that B Bar J had presented some evidence that the lodge was primarily a personal residence which created a question of fact for the jury to decide. At all times during the course of litigation, however, B Bar J knew of and had in its possession the evidence that ultimately doomed its MCPA claim. B Bar J ignored the tax returns and accounting records at its own peril. The MCPA's provision permitting attorney fees can be a double-edged sword. Although rare, there are times when it is appropriate for a district court to award successful defendants attorney fees to ensure that the MCPA is not abused. Given the facts of this case, the District Court did not act without conscientious judgment or exceed the bounds of reason when it determined that this was one of those cases.

¶22 Carlisle asks us to award it additional attorney fees on appeal under § 30-14-133(3), MCA. We decline Carlisle's request, however, and do not award it additional attorney fees.

¶23 For the reasons state above, the decisions of the District Court are affirmed.


/S/ MIKE McGRATH

9

We concur:


/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BETH BAKER