Justice Ingrid Gustafson delivered the Opinion of the Court.
***426 ¶ 1 Jason Klubben (Father) appeals from an order of the Fourth Judicial District Court, Missoula County (Montana Court), determining that it had jurisdiction over the child custody proceeding concerning B.K., his minor child. We affirm.
***427 FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Father and B.K.'s mother, Jessica Smalling (Mother) had an on-again, off-again romantic relationship from approximately 2012 until 2016, during which they separated and reconciled several times. Father and Mother never married. B.K. was born in Montana in 2013 and lived with Mother in Montana. On August 1, 2014, following a major rupture in their relationship, Father moved to Minnesota for work and Mother *705 and B.K. remained in Montana. The parties then again reconciled and in September 2015, Mother and B.K. moved to Minnesota on a temporary basis to live with Father. In addition to B.K., Mother has another child from a prior relationship. Pursuant to agreement with that child's father, Mother would only be absent from Montana for a year or less. According to Mother, the purpose of the move to Minnesota was to increase Father's employment opportunities and allow a return to Montana where he would either find new employment or work remotely from Montana. Father asserts the move was more permanent than that but acknowledged they might have moved to Washington or elsewhere in the future. Mother and B.K. remained in Minnesota eight to nine months until May 21, 2016, when Mother and Father ended their relationship. Thereafter, Mother, B.K., and Mother's other child moved back to Montana. Shortly after moving back to Montana, Mother agreed B.K. could vacation with Father's parents who live in Washington and have had ongoing contact with B.K. throughout her life. The plan was for B.K. to visit her grandparents and then travel with them to and from North Dakota where they would see Father. Upon B.K.'s planned return to Montana, Father advised Mother B.K. was not returning to Montana with his parents. He "took custody" of her on June 24, 2016. Five days later, on June 29, 2016 (at 10:39 a.m., per the Montana Court's Findings of Fact), Mother commenced a child custody proceeding by petitioning the Montana Court to establish a parenting plan for B.K. Five months later, on November 2, 2016 Father initiated a separate custody proceeding in the Fourth Judicial District Court of Minnesota (Minnesota Court) by filing a complaint to establish paternity and resolve parenting issues.[1]
¶ 3 Pursuant to the Uniform Child Custody Jurisdiction and ***428 Enforcement Act (UCCJEA) adopted by both Montana and Minnesota, the Montana and Minnesota Courts conferred several times (10/25/16, 11/2/16, 11/9/16, and 1/20/17) to determine which court had jurisdiction over the matter. During these conferences, the courts together with the parties and their attorneys discussed and developed an agreed upon process for determining jurisdiction. At the November 2, 2016 conference, the Minnesota Court suggested the parties file briefs and affidavits upon which to submit the jurisdiction issue. The Minnesota Court further suggested that before proceeding in that manner, the parties consider participation in mediation. At the subsequent conference, it became apparent neither party was willing to participate in mediation and the courts again agreed additional evidence was needed to determine the appropriate jurisdiction. Neither party requested a hearing and counsel for both parties expressed agreement to filing affidavits and legal briefs in support of their respective positions on jurisdiction. The Minnesota Court then expressed, "if we're not going to do it in a mediation style, I tend to think we're maybe better moving into a motion if we're going to expedite it," whereupon the Montana Court responded that Father "has in fact filed here in Montana what essentially is a motion to dismiss for lack of jurisdiction." The Minnesota Court then advised, "I want to make sure that we're efficient and I want to make sure that at the end of this everybody on this call feels well served by two judges who are eager to do our professional best to reach a fair result." Upon the courts and parties agreeing for the Montana Court to rule on Father's motion to dismiss after the parties' submittal of affidavits and legal briefs, the Minnesota court advised, "For the time being then, I'm going to stand down. Our case is more or less on hold while Judge Townsend decides her jurisdictional issue." On December 30, 2016, the Montana Court issued thorough, highly detailed findings of fact and conclusions of law in an Order Re: Jurisdiction Under the UCCJEA and Denying Respondent's Motion to Dismiss for Lack of Jurisdiction. The Montana Court found: the Montana child custody proceeding was commenced prior to *706 Mother being served with the Complaint and Summons prepared for the Minnesota case; the Mother's move to Minnesota with B.K. was a temporary absence from Montana; Montana was the home state of B.K.; Montana has jurisdiction over B.K. and the child custody proceeding; and that, although not part of her consideration for finding Montana jurisdiction, Montana was a convenient forum given Father's allegations regarding Mother's ability to parent as most evidence of those allegations was located in Montana or Washington, not Minnesota. After the Montana Court determined Montana to be the ***429 home state of B.K., the courts and parties again conferred on January 20, 2017. At that conference, the Montana Court inquired of the Minnesota Court, "So Judge Wahl, I just wonder if there is anything else that you and I have to do in connection with this case as far as what you think or what Minnesota law might be involved here." The Minnesota Court responded, "I don't see any further involvement for my court or Minnesota courts. I believe the matter is not properly a part of our jurisdiction and you have appropriately asserted the jurisdiction in the Montana courts unless there's some reason for me to be involved, I will bow out."
¶ 4 Father appeals from the Montana Court's December 30, 2016 Order.
STANDARD OF REVIEW
¶ 5 A district court's determination of whether it has subject matter jurisdiction is a conclusion of law reviewed for correctness. In re Marriage of Sampley , 2015 MT 121, ¶ 6, 379 Mont. 131, 347 P.3d 1281.
DISCUSSION
¶ 6 Mother claims Montana is B.K.'s home state and the eight to nine months B.K. spent in Minnesota was a temporary absence from Montana. In opposition, Father claims Minnesota is B.K.'s home state and the time she was absent from Minnesota from May 21, 2016, to the commencement of the child custody proceeding on June 29, 2016, was a temporary absence from Minnesota. The District Court agreed with Mother.
¶ 7 At issue here is whether Montana is B.K.'s home state. This issue turns on whether B.K.'s absence from Montana was "temporary" and implicates our codification of the Uniform Child Custody Jurisdiction Act (UCCJA), which was enacted to promote uniformity and discourage jurisdictional conflict. See §§ 40-7-101 to -317, MCA ; Stephens v. Fourth Judicial Dist. Court , 2006 MT 21, ¶ 6, 331 Mont. 40, 128 P.3d 1026. In 1977 Montana adopted the UCCJA. Prior to all 50 states adopting the UCCJA, the disparate and conflicting exercise of jurisdiction over child custody matters encouraged forum shopping, self-help, and re-litigation of custody matters in never ending disputes. Sampley , ¶ 23. The purpose of the UCCJA was to eliminate these problems by establishing uniform criteria for states to exercise jurisdiction of child custody matters. Sampley , ¶ 23 (citing UCCJA § 1 ). The UCCJA aimed to establish a bright-line rule whereby a state could exercise jurisdiction if it was the child's "home state." Sampley , ¶ 23. The six-month requirement for establishing a home state was based on the ***430 assumption most children integrate into a community after living in that community for six months. Sampley , ¶ 23 (citing UCCJA § 3 Comment). The UCCJA was revised to help further the Act's goals and address inconsistencies among state interpretation and enforcement of the UCCJA resulting in the UCCJEA, which Montana adopted in 1999. The UCCJEA did not substantially change the definition of "home state" from the UCCJA and Montana did not repeal the UCCJA but instead amended its language. Sampley , ¶ 24. The UCCJEA did not alter the purpose or meaning of the "home state" requirement, and in adopting the UCCJA and UCCJEA definition of "home state" the legislature intended to create a bright-line rule based on the assumption a child's integration into a community occurs after six months of living in a community. Sampley , ¶ 24 (citing Sec. 4, Ch.91, L. 1999).
¶ 8 Section 40-7-201, MCA, provides for establishing initial jurisdiction of a child custody determination:
(1) Except as otherwise provided in 40-7-204, a court of this state has jurisdiction *707 to make an initial child custody determination only if:
(a) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
¶ 9 Pursuant to § 40-7-103(7), MCA, " 'Home state' means the state in which a child lived with a parent ... for at least 6 consecutive months immediately before the commencement of a child custody proceeding.... A period of temporary absence of any of the mentioned persons is part of the period." We previously addressed how courts properly determine what constitutes a temporary absence and what distinguishes a temporary absence from an absence that will not be included as time a child lived in Montana for purposes of § 40-7-103(7), MCA, consistent with the Montana legislature's intent in adopting the definition of "home state":
Forty-nine states have adopted the UCCJEA, and several courts have considered what constitutes a "temporary absence" for the purposes of determining a child's home state. Despite the UCCJEA's purpose of uniform state treatment of child custody jurisdiction issues, these jurisdictions' treatment of the term has been far from uniform. (citations omitted ). Instead, three primary approaches have developed. Some courts have considered only the duration of an absence in determining whether the absence is ***431 temporary. (citation omitted ). Others have considered the intention of a child's parent, parents, or other caregivers. (citations omitted ). Still others have adopted a "totality of the circumstances" test, considering factors like the parties' living arrangement, the location of the child's doctor, receipt of public benefits, and frequency of relocation, in addition to duration and intention. (citation omitted ). We are not particularly persuaded by the reasoning of these courts to adopt any of these approaches. The decisions we have reviewed provide little rationale for why any particular approach best gives effect to legislatures' intents in adopting the UCCJEA.
...
A totality of the circumstance approach makes the most sense for determining whether an absence renders the integration assumption unreasonable. We cannot say that a single factor will be dispositive to this determination in all cases; neither the intentions and expectations of the parents nor the duration of the absence will control every situation. Instead, the continued reasonableness of the integration assumption in light of an absence is best considered in the context of the totality of the circumstances surrounding the absence.
While such a standard is somewhat more subjective than the bright-line, six-month rule imposed by the legislature; and while such subjectivity interferes with the UCCJEA's goal of uniform application of child custody jurisdiction laws between states; requiring temporary absences to be measured against the purposes and underlying assumptions of the intended bright-line rule in an objective test seems to provide a rule that is as precise as possible. At the very least, we think that providing such a standard will better promote uniform treatment of child custody jurisdiction than the similar standardless tests of other states.
Sampley , ¶¶ 22, 26-27.
¶ 10 The UCCJEA's intent to create a bright-line rule is based on the assumption a child usually integrates into a community after six months of living there. However, the UCCJEA recognizes this assumption of integration may be rebutted by jurisdictional facts. Thus, the court must apply these jurisdictional facts in the "home state" determination under the UCCJEA. Recognizing the potential for inconsistencies among state interpretation and enforcement in this regard, the UCCJEA contains important judicial communication and cooperation provisions to promote uniformity and reduce and minimize the potential for courts to issue inconsistent, competing jurisdictional ***432 orders in child custody *708 proceedings. Section 40-7-107(1), MCA, precludes a court of this state from exercising jurisdiction "if at the time of commencement of the proceeding a proceeding concerning the custody of the child had been previously commenced in a court of another state having jurisdiction ... unless the proceeding has been terminated or is stayed by the court of the other state...." Further, before hearing a child custody proceeding, the court must determine if a child custody proceeding was previously commenced in a court of another state and, if so, "stay its proceeding and communicate with the court of the other state." Section 40-7-107(2), MCA. Section 40-7-139, MCA, then provides the ability for the court to communicate with a court of another state, to allow the parties to participate in the communication, and for a record of the communications between the courts to be kept. Section 40-7-140, MCA, then provides for a court of this state to request a court of another state to hold an evidentiary hearing; order a person to produce evidence; order a child custody evaluation; forward certified copies of the transcript, evidence presented, and evaluation prepared to a court of another state; and order a party to appear in the proceeding. Section 40-7-140, MCA, provides these same abilities to a court of another state. Communication between courts with participation of the parties is designed to reduce potential for courts to be issuing competing, inconsistent orders regarding jurisdiction.
¶ 11 Prior to the Montana Court reaching its determination that Montana was B.K.'s home state, the Montana and Minnesota Courts did exactly what they were supposed to do under the UCCJEA to resolve the jurisdictional issue. On August 16, 2016, the Montana Court set a status conference on Mother's petition for September 6, 2016. Per § 40-7-107, MCA, the Montana Court was in contact with the Minnesota Court prior to setting the status hearing to determine if a child custody proceeding had been previously commenced in Minnesota.[2] The Montana Court learned no action was pending in ***433 Minnesota. Father's attorney appeared telephonically at the status hearing on September 9, 2016.[3] The Montana Court advised Father of the need to make a filing in Montana to avoid default and requested Father's counsel notify the court when an action was actually filed in Minnesota so that a UCCJEA conference could be held with the Minnesota Court. On September 19, 2016, Father filed a limited appearance on Mother's petition challenging jurisdiction and seeking dismissal of Mother's petition. Thereafter, the Montana Court set a further status conference on October 25, 2016, at which time the Montana and Minnesota Courts began their several UCCJEA conferences. During these conferences, the courts appropriately determined: 1) the first commenced child custody proceeding was that filed by Mother in Montana, 2) additional evidence from the parties relating to jurisdictional facts was necessary to determine the jurisdictional issue, 3) the process by which the parties would submit affidavits and legal memoranda regarding jurisdiction, and 4) the Montana Court would determine the first-in-time filed motion to dismiss for lack of jurisdiction. As provided for in the UCCJEA, the Minnesota Court stayed its proceedings until the Montana Court determined the first-in-time filed jurisdictional issue. After the Montana Court determined Montana to be the home state of B.K., the courts and parties again conferred on January 20, 2017. At the conclusion of that conference, the Minnesota Court accepted the Montana Court's determination *709 and declined further involvement of the Minnesota Court in the child custody proceeding. The procedure engaged in by the Montana and Minnesota Courts was exactly that provided for by the UCCJEA.
¶ 12 Next, we review the Montana Court's application of § 40-7-201, MCA, and whether a totality of the circumstances supported its finding that the time Mother and B.K. lived in Minnesota was a temporary absence from Montana such that this eight- to nine-month period is included as time living in Montana for purposes of §§ 40-7-103(7) and 40-7-201(1), MCA. Sampley , ¶¶ 22, 26-27. In this case, the Montana Court was correct when it decided that Montana is B.K.'s home state.
¶ 13 Under the UCCJEA, general principles of determining jurisdiction, including a party's domicile, are inapplicable. See § 40-7-201(3), MCA. Instead, the UCCJEA prioritizes home-state ***434 jurisdiction for child custody proceedings, under which a state has jurisdiction if it is the child's "home state." Section 40-7-201(1)(a), MCA, provides that a court in Montana has home-state jurisdiction in two manners: (1) if Montana is the child's home state; "or" (2) if (a) Montana was the child's home state "within 6 months before the commencement of the proceeding"; (b) the child is absent from Montana; and (c) a parent continues to live in Montana (emphasis added).
¶ 14 The dissent asserts the time B.K. spent out of Minnesota from May 21, 2016 prior to the commencement of the child custody proceeding on June 29, 2016 was a temporary absence from Minnesota and should be counted as time B.K. resided in Minnesota for purposes of establishing home state jurisdiction under the first manner of § 40-7-201(1)(a), MCA. The Montana Court did not make that finding and instead found that the time B.K. and Mother spent residing in Minnesota was a temporary absence from Montana such that this eight- to nine-month period is included as time living in Montana. From the facts found by the Montana Court, B.K. did not live in Minnesota at least six consecutive months immediately before the commencement of the child custody proceeding[4] and therefore Minnesota was not B.K.'s home state under the first manner provided in § 40-7-201(1)(a), MCA.
¶ 15 In Stephens , ¶¶ 16-17, 331 Mont. 40, 128 P.3d 1026, this Court considered the second manner of establishing home-state jurisdiction under § 40-7-201(1)(a), MCA, because Montana was, at one point, the children's home state; the children were absent from Montana; and father continued to live in Montana. In that case, the Court concluded Montana lost its status as the children's home state when the children spent more than six months living in Arkansas, making Arkansas their home state. Stephens , ¶¶ 10, 17. After the family spent more than six months in Arkansas, the family returned to Montana in May 2005; however, "[mother] removed the children from Montana in August 2005, thereby stopping the six-month clock needed to establish Montana as the 'home state' for purposes of jurisdiction under the UCCJEA." Stephens , ¶ 17.
¶ 16 Pursuant to the Montana Court's finding that the time B.K. and Mother spent residing in Minnesota was a temporary absence from ***435 Montana such that this eight- to nine-month period is included as time living in Montana, Montana is also B.K.'s home state under the second manner of establishing home state jurisdiction under § 40-7-201(1)(a), MCA.
¶ 17 We turn then to review of the Montana Court's finding that the time B.K. and Mother spent residing in Minnesota was a temporary absence from Montana such that this eight- to nine-month period is included as time living in Montana. It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. In re A.F. , 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Rather, the ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a *710 basis for decision, and whether they are supported by the evidence presented. Rose v. Rose , 2016 MT 7, ¶ 22, 382 Mont. 88, 364 P.3d 1244. Even when there is a conflict in the evidence, this Court will uphold the district court's determinations where there is substantial credible evidence to uphold its findings of fact and conclusions of law. Bock v. Smith , 2005 MT 40, ¶ 27, 326 Mont. 123, 107 P.3d 488.
¶ 18 The Montana Court reviewed the initial and responsive affidavits of both Mother and Father and the affidavit of Mathew Vantassel, the father of Mother's other child. While the facts set forth in these affidavits do not conflict with each other, Mother and Father disagreed as to how the courts should interpret those facts in determining whether Mother intended to remain indefinitely in Minnesota. It is not this Court's function to reweigh evidence or substitute its judgment regarding the strength of the evidence for that of the district court. In Re A.F. , ¶ 24. The Montana Court considered and weighed that evidence and prepared comprehensive findings and conclusions pertinent to the jurisdictional issue supporting the basis of its determination that Montana is B.K.'s home state. The record contains substantial credible evidence supporting the findings and conclusions of the Montana Court.
¶ 19 The dissent asserts that although the term "temporary absence" found in § 40-7-103(7), MCA, is not defined, implicit in this statute is that a "temporary absence" cannot be longer than the six-month "period" and still be a "part" of that period. We do not agree. Consistent with our determination in Sampley , "[a] totality of the circumstance approach makes the most sense for determining whether an absence renders the integration assumption unreasonable" rather than a blanket conclusion that a temporary absence cannot be longer than six months. Sampley , ¶¶ 26-27.
***436 ¶ 20 Sampley requires a consideration of the totality of the circumstances, including the physical presence of the child; the integration of the child into the Montana community; the duration of the absence; the parties' living arrangements; the location of B.K.'s other family members; the frequency of relocation; and the parties' intentions. The Montana Court considered the totality of these circumstances and based on substantial credible evidence concluded the time Mother and B.K. spent living in Minnesota was a "temporary absence" from Montana. We conclude the District Court correctly applied the provisions of §§ 40-7-103(7) and -201(1)(a), MCA.
CONCLUSION
¶ 21 Consistent with the requirements and intent of the UCCJEA, the Montana and Minnesota Courts appropriately communicated and cooperated exactly as they were supposed to in order to resolve the jurisdictional issue. The record contains substantial credible evidence supporting the jurisdictional findings and conclusions of the Montana Court. As such, we conclude the Montana Court did not err in finding B.K.'s home state to be Montana and assuming initial subject matter jurisdiction over her child custody proceeding.
¶ 22 Affirmed.
We concur:
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.

Although the Complaint is dated June 1, 2016, and Father served the Complaint on Mother June 29, 2016, at 2:30 p.m. (per the Montana Court's Findings of Fact), he did not attempt to file it until October 24, 2016. The Clerk's office apparently refused to file the original Complaint for various deficiencies and an Amended Complaint was ultimately filed on November 2, 2016.

There was some question throughout the District Court case of which party commenced their case first because Minnesota litigation commences when the defendant is served (Minn. R. Civ. P. 3.01 ) while Montana litigation commences when the complaint is filed (M. R. Civ. P. 3 ). Under the UCCJEA, " '[c]ommencement' means the filing of the first pleading in a proceeding." Section 40-7-103(5), MCA ; Minn. Stat. § 518D.102. This is perhaps a conflict of laws question for Minnesota but not at issue here. Here, there is no question that the Montana case was filed June 29, 2016, and the Minnesota case was served on the same day but not successfully filed with the court until November 2, 2016. Thus the Montana case was the first to commence under the UCCJEA.

Prior to the hearing, Father's attorney had sent a letter to the Montana Court's Clerk of Court objecting to jurisdiction and asserting Minnesota had jurisdiction even though he had not yet made a formal filing in Minnesota.

B.K. was in Minnesota not quite 5 months prior to the commencement of the child custody proceeding on June 29, 2016 because she moved back to Montana with Mother on May 21, 2016. The Montana Court determined the time B.K. was outside Montana to be temporary and, as such, included as time living in Montana.