DA 19-0310

FILED

05/12/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0310

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 123N

IN RE THE PARENTING OF B.K.,

    A Minor Child.

JESSICA SMALLING,

        Petitioner and Appellee,

    and

JASON KLUBBEN,

        Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DR 16-476<br>Honorable Karen S. Townsend, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Jason F Klubben, Self-represented, Mead, Washington

        For Appellee:

            Emily Lucas, Brandi Rose Ries, Ries Law Group, Missoula, Montana

                        Submitted on Briefs: April 1, 2020

                                Decided: May 12, 2020

Filed:

                      _____
                               Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Respondent and Appellant Jason Klubben (Jason) appeals the Findings of Fact, Conclusions of Law and Final Parenting Plan Order issued by the Fourth Judicial District Court, Missoula County, on April 23, 2019.  We affirm.

¶3     This matter has been before this Court repeatedly over the last few years, and a more complete factual background can be found in our decision regarding the parties' first appeal, *In re Parenting of B.K.*, 2018 MT 217, 392 Mont. 426, 425 P.3d 703, and need not be repeated in full here.  Jason had an on-again, off-again romantic relationship with B.K.'s mother, Jessica Smalling (Jessica), from approximately 2012 until 2016.  B.K. was born in Montana in 2013.  Jason moved to Minnesota in 2014.  In September 2015, Jessica, Jessica's child from another relationship, and B.K. moved to Minnesota to temporarily live with Jason.  After approximately nine months in Minnesota, Jessica, Jessica's other child, and B.K. moved back to Montana after Jason and Jessica ended their relationship.  Jessica filed a child custody proceeding in Montana in June 2016.  Jason filed a separate child custody proceeding in Minnesota in November 2016.

¶4 Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Montana and Minnesota courts conferred several times to determine which court had jurisdiction over the matter. As Jason had filed a motion to dismiss the Montana case for lack of jurisdiction, the courts determined that the parties should brief the jurisdiction issue in the Montana proceeding. After briefing, the District Court determined it had jurisdiction pursuant to the UCCJEA and that Montana was B.K.'s home state. The Minnesota Court then "bow[ed] out" from the matter. Jason appealed, asserting the District Court erred when it determined it had jurisdiction under the UCCJEA because B.K.'s home state was Minnesota. We ultimately held the District Court correctly determined B.K.'s home state was Montana and correctly assumed jurisdiction under the UCCJEA. *In re Parenting of B.K.*, ¶ 21.

¶5 Following remand to the District Court, Jessica moved for a hearing to finalize the parenting plan. The District Court set a contested hearing for March 20, 2019. In the month prior to the hearing, Jason filed numerous pleadings before both the District Court and this Court, seeking to disqualify the presiding judge, for a writ of mandamus, and to continue the hearing. Jason's various motions were uniformly denied by both the District Court and this Court. The District Court held the contested hearing as scheduled on March 20, 2019, where it took testimony from several witnesses, including both Jason and Jessica. On April 11, 2019, Jason filed a Sworn Petition for Emergency Order of Protection and Emergency Motion to Adopt Respondent's Parenting Plan, alleging he had been threatened by Jessica's husband, Nicholas Dryer (Nick), and that Jessica and Nick had

3

interfered with his communication with B.K. The District Court denied and dismissed Jason's petition on April 15, 2019. On April 23, 2019, the District Court issued its Findings of Fact, Conclusions of Law and Final Parenting Plan Order, which adopted Jessica's proposed parenting plan as the final parenting plan. Jason appeals.

¶6 "A district court's determination of whether it has subject matter jurisdiction is a conclusion of law reviewed for correctness." *In re Parenting of B.K.*, ¶ 5 (citing *In re Marriage of Sampley*, 2015 MT 121, ¶ 6, 379 Mont. 131, 347 P.3d 1281). The doctrine of res judicata bars re-litigation of a claim that a party has already had the opportunity to litigate. *Olsen v. Milner*, 2012 MT 88, ¶ 20, 364 Mont. 523, 276 P.3d 934 (citing *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267).

¶7 Though our 2018 decision in *In re Parenting of B.K.* affirmatively settled the jurisdiction issue, Jason spends much of his briefing before this Court—and before the District Court—attempting to relitigate his belief that Montana does not have jurisdiction over the case. His arguments regarding jurisdiction are improper, without merit, and barred by the doctrine of res judicata. Montana has jurisdiction over the proceeding pursuant to the UCCJEA and the District Court had jurisdiction to enter the final parenting plan order.

¶8 We review a parenting plan order to determine if the district court's findings are clearly erroneous. *In re Marriage of Woerner*, 2014 MT 134, ¶ 11, 375 Mont. 153, 325 P.3d 1244 (citing *In re Marriage of Crowley*, 2014 MT 42, ¶ 44, 374 Mont. 48, 318 P.3d 1031). "Absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting unless there is a clear abuse of discretion." *Woerner*, ¶ 12 (citing *In*

*re Marriage of Epperson*, 2005 MT 46, ¶ 17, 326 Mont. 142, 107 P.3d 1268). "Trial courts have broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision." *Crowley*, ¶ 44 (citing *In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28).

¶9 Section 40-4-212, MCA, requires a district court to determine a parenting plan in accordance with the best interest of the child. The statute directs a district court to consider "all relevant parenting factors" and includes a non-exhaustive list of factors which may be considered by the court. Section 40-4-212(1), MCA. The District Court's findings of fact are not clearly erroneous as they are based on substantial credible evidence. The District Court took testimony, weighed the evidence and credibility of witnesses, and made thorough, detailed findings of fact. The District Court thoroughly considered and addressed the § 40-4-212(1), MCA, factors in its Order and determined it is in B.K.'s best interest to primarily reside with Jessica. The District Court's findings of fact are not clearly erroneous and its ultimate decision regarding the parenting plan was not a clear abuse of discretion.

¶10 "This Court will not overturn a district court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion." *Boushie v. Windsor*, 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631 (citing *In re Marriage of Lockhead*, 2013 MT 368, ¶ 12, 373 Mont. 120, 314 P.3d 915). A notice of appeal "shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken." M. R. App. P. 4(5)(a)(i).

¶11 Jason filed his petition for an order of protection on April 11, 2019, which the District Court denied without hearing on April 15, 2019. Jason did not file a notice of appeal regarding the denial of his petition within 30 days of the District Court's denial and did not mention the denial of his petition as an issue he was appealing in his notice of appeal filed on May 22, 2019. In his briefing, Jason argues the District Court erred by not granting him an order of protection. This argument is both untimely pursuant to M. R. App. P. 4(5)(a)(i) and without merit. The District Court did not abuse its discretion by dismissing Jason's petition without holding a hearing because he did not set forth a prima facie case that he was either in immediate danger of harm or a victim of a crime enumerated in § 40-15-102, MCA, as required by § 40-15-201, MCA.

¶12 "The court reporter shall take the constitutional oath of office and file it with the clerk of court." Section 3-5-601(1), MCA. The court reporter is required to "take full stenographic notes of the testimony and of all proceedings[.]" Section 3-5-603, MCA. The report of a duly appointed and sworn court reporter, "certified as being a correct transcript of the testimony and proceedings in the case, is prima facie a correct statement of such testimony and proceedings." Section 3-5-612, MCA.

¶13 In this case, Jason has woven a tale of a conspiracy involving several parties—including both the presiding judge and the court reporter—to alter and tamper with the transcript in this case. Catherine A. Rebish, the court reporter in this case, filed a certification that the transcript represented "a true and accurate transcription" of her stenotype notes. While Jason has alleged the transcript was altered, he has not presented

evidence supporting such an accusation. The court reporter, a sworn officer of the court, has certified the transcript is "true and accurate" and there is no merit to Jason's allegation that the transcript has been altered.

¶14 "Courts have the inherent power to levy sanctions to curb abusive litigation practices." *Chapman v. Maxwell*, 2014 MT 35, ¶ 17, 374 Mont. 12, 322 P.3d 1029 (citing *Hartsoe v. Tucker*, 2013 MT 256, ¶ 14, 371 Mont. 539, 309 P.3d 39).

¶15 Finally, Jessica asks this Court to declare Jason a vexatious litigant and impose a sanction of attorney's fees and costs she incurred in responding to this appeal. We agree that an award of attorney fees and costs to Jessica is warranted because Jason's appeal was "taken without substantial or reasonable grounds." M. R. App. P. 19(5). Jason filed a frivolous appeal supported by briefing which is long on conspiracy theories and short on legal arguments.[1] Jason is therefore ordered to pay Jessica's reasonable attorney fees and costs of appeal. At this time, we decline to declare Jason a vexatious litigant; however, we do caution him against further frivolous filings as he risks both a declaration as a vexatious litigant and financial sanctions in such a case.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

---

[1] We note Jason has asked for Jessica's response brief to be dismissed for failing to follow M. R. App. P. 11(4)(a), because a reply brief shall not exceed 5,000 words, and Jessica's brief contained 8,160 words. Jessica's response brief is her principal brief as appellee, and therefore subject to a limit of 10,000 words. Jason's argument regarding Jessica's violation of M. R. App. P. 11(4)(a) is without merit.

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE