FILED

02/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0130

DA 24-0130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 41

IN RE THE PARENTING OF F.L.F.L.K.:

CHRISTOPHER J. LAMM,

        Petitioner and Appellant,

  and

AMANDA R. KINNEY ANDERSON,

        Respondent and Appellee.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
                  In and For the County of Roosevelt, Cause No. DR-2023-004
                  Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Christopher J. Lamm, Self-Represented, Williston, North Dakota

        For Appellee:

            Amanda R. Kinney Anderson, Self-Represented, Bainville, Montana

Submitted on Briefs:  October 23, 2024

Decided:  February 25, 2025

Filed:

                                      _____
                                          Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Petitioner and Appellant Christopher J. Lamm (Christopher) appeals from the February 7, 2024 Findings of Fact, Conclusions of Law and Order Following Hearing on Establishment of a Final Parenting Plan and Order on Petition for Contempt for Failure to Pay Child Support and the accompanying Final Parenting Plan issued by the Fifteenth Judicial District Court, Roosevelt County. The District Court's order came after an informal domestic relations trial (IDRT), at which neither Christopher nor Respondent and Appellee Amanda R. Kinney Anderson (Amanda) were represented by counsel.

¶2 We address the following restated issues on appeal:

1. *Whether the District Court abused its discretion in the manner in which it conducted the informal domestic relations trial.*

2. *Whether the District Court clearly abused its discretion in formulating the final parenting plan.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Christopher and Amanda are the parents of F.L.F.L.K. Christopher lives in Williston, North Dakota, while Amanda lives in Bainville. The parties were not married and approximately four months after F.L.F.L.K. was born, Christopher filed a Petition for Parenting Plan in the District Court on March 1, 2023. The District Court held a hearing on May 23, 2023. As both parties were proceeding pro se, the court presided over the hearing in a generally informal manner. Rather than a traditional hearing structure involving legal argument and evidentiary presentations, the court essentially had a conversation with Christopher and Amanda after they were sworn in. At the conclusion of

2

the hearing, the court orally established an interim parenting plan which would initially provide Christopher with two two-hour supervised visits in Williston per week, with the goal of gradually increasing his parenting time until he was "probably a fifty-fifty parent" and "the goal is by about year one and half or two years that you are seeing [F.L.F.L.K.] almost probably more than you will have time to manage." The court informed the parties "that is what it's going to be. I'm not going to put it into writing. I told you; I will remember." The parties filed numerous motions in the case over the next year, including competing motions for permanent parenting plans and Amanda filing a petition for contempt alleging Christopher failed to pay child support.

¶5     On August 30, 2023, this Court issued an Order which added a new rule establishing the IDRT process to the Montana Uniform District Court Rules as MUDCR 17. *Access to Justice Commission: In re the Adoption of Guidelines for Establishing Informal Domestic Relations Trials*, No. AF 07-0110, Order (Mont. Aug. 30, 2023). MUDCR 17 sets out a process for conducting an IDRT when at least one party is self-represented "in every original or modification action for dissolution of marriage, parenting and visitation, child and medical support, declaration of invalidity of marriage, paternity, separation, grandparent-grandchild contact, or orders of protection brought under MCA Title 40, including interim proceedings[.]" MUDCR 17(a). In an IDRT, "parties may present any evidence they believe is relevant. The court may admit any evidence a party offers, even if this evidence might be inadmissible under formal rules of evidence, and may determine how much weight to give any evidence. The traditional format used to question witnesses at trial does not apply. In many cases, the parties will be the only witnesses. The parties

3

may call other witnesses in the discretion of the court. The court may question the parties and any other witnesses, and the parties may suggest additional topics or questions." MUDCR 17(e). The Rule also specifically sets forth how an IDRT is to proceed. MUDCR 17(i). MUDCR 17 came into effect on October 1, 2023.

¶6 On January 22, 2024, the District Court issued an Order Setting Hearing on Parties' Parenting Plan. In that order, the court informed the parties that they would "be given one hour each to present their case to the [c]ourt for what they consider an appropriate Parenting Plan," reminded the parties the court would make its determination based on the best interests of the child, and notified the parties that the "hearing will be conducted under Montana District Court rule 17 which provides for Informal Domestic Relations Trials." The court's order setting the hearing did not "explain the informal domestic relations trial process and advise the parties of their right not to consent." MUDCR 17(b).

¶7 The District Court held the Parenting Plan Hearing on February 5, 2024. Prior to taking testimony, the court held the following colloquy with Christoper:

> THE COURT: Okay. I don't know if you read about that uh, I can't remember what they call it but it's domestic relations informal trial process.
>
> MR. LAMM: Yes Your Honor.
>
> THE COURT: And that's where I get to ask the questions as opposed to having people ask their own questions. It's a new thing so it hasn't been, you know, [inaudible] understand that the standard for child support is or child custody and visitation is the best interest of the child.
>
> MR. LAMM: Yes Your Honor.

The District Court then questioned both Christopher and Amanda regarding their work and personal lives, relationships with F.L.F.L.K. and each other, ability to care for F.L.F.L.K.,

4

the childproofing of their homes, prior visitation and travel schedules, and other relevant topics related to the best interests of F.L.F.L.K. The court heard from both parties regarding their proposed parenting plans and informed Christopher and Amanda it would be formulating and drafting a parenting plan, but, in the meantime, Christopher was to have two five-hour visits with F.L.F.L.K. per week. Near the end of the hearing, Christopher and the court had the following exchange:

> MR. LAMM: So just for the record, I didn't see my daughter for three months and we're just gonna [sic] like wipe the slate clean?

> THE COURT: We're just gonna [sic] move forward cuz I can't fix that so.

> MR. LAMM: Well I can get less than two shift, I can get something, I can get a break on errors, I mean there's something we can do that she's held accountable for denying me three months of my daughter.

> THE COURT: Well I'm not going to so. Move forward. The friendlier you get the better things will go. You've got to learn to get along with each other [inaudible]. Because once school hits it will become more complicated.

¶8 The District Court issued its Findings of Fact, Conclusions of Law and Order Following Hearing on Establishment of a Final Parenting Plan and Order on Petition for Contempt for Failure to Pay Child Support and accompanying Final Parenting Plan on February 7, 2024. The court's parenting plan adopted a residential schedule wherein Amanda was designated F.L.F.L.K.'s primary custodian and Christopher would have alternating weeks of two days and three days of visitation. Initially, those visits would be five hours long, with an additional hour of visitation time being added each month to prepare F.L.F.L.K. to transition to overnight visits with Christopher. Once F.L.F.L.K. turned two, Christopher's alternating weeks would have F.L.F.L.K. stay overnight with

5

him—picking up at 7 a.m. on one day and dropping her off at 7 p.m. the next—and on his three-day visitation weeks he would have another 12-hour parenting time from 7 a.m. to 7 p.m.

¶9      Christopher appeals.

**STANDARD OF REVIEW**

¶10     District courts have broad discretion in matters of trial administration and we review their decisions regarding trial administration for abuse of discretion. *Estate of Frazier v. Miller*, 2021 MT 85, ¶ 12, 404 Mont. 1, 484 P.3d 912 (citing *Jarvenpaa v. Glacier Elec. Coop.*, 1998 MT 306, ¶ 12, 292 Mont. 118, 970 P.2d 84). A court abuses its discretion when it acts arbitrarily or unreasonably, resulting in a substantial injustice. *Estate of Frazier*, ¶ 11.

¶11     District courts have broad discretion to make and modify parenting plan determinations under the applicable standards of §§ 40-4-212, -219, and -220, MCA, and this Court reviews parenting plan determinations and modifications for a clear abuse of discretion. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894 (citations omitted).

**DISCUSSION**

¶12     *1. Whether the District Court abused its discretion in the manner in which it conducted the informal domestic relations trial.*

¶13     Christopher asserts the District Court failed to inform him of the particulars of the IDRT process, which "deprived the Parties from a complete trial." Amanda generally contends that the District Court informed both parties of the new process where the court

6

would ask questions and both she and Christopher confirmed they understood. While we find the District Court did not completely explain the IDRT process as intended by MUDCR 17, Christopher did not object to this below and ultimately the manner in which the court conducted the IDRT was not an abuse of discretion.

¶14 In the District Court's January 22, 2024 Order Setting Hearing on Parties' Parenting Plan, the court notified the parties that the "hearing will be conducted under Montana District Court rule 17 which provides for Informal Domestic Relations Trials." MUDCR 17(b) provides that "[t]he court must explain the informal domestic relations trial process and advise the parties of their right not to consent." The Rule's use of the term "'must' [is] mandatory rather than permissive." *Montco v. Simonich*, 285 Mont. 280, 287, 947 P.2d 1047, 1051 (1997) (citation omitted). The District Court's failure to inform Christopher and Amanda of their right to not consent to the IDRT process and choose to proceed, pro se, with a formal hearing instead was a procedural error. The District Court committed a further procedural error when it did not, at the start of the IDRT hearing, comply with MUDCR 17(i)(1). That Rule states that "[a]t the beginning of an informal domestic relations trial, the court will ask the parties to affirm that they understand the rules and procedures of the informal domestic relations trial process, they are consenting to this process freely and voluntarily, and they have not been threatened or promised anything for agreeing to the informal domestic relations trial." MUDCR 17(i)(1).

¶15 "We will not review a district court's procedural error unless the appellant has made a timely objection." *Kinsey-Cartwright v. Brower*, 2000 MT 198, ¶ 19, 300 Mont. 450, 5 P.3d 1026 (citing *Green v. Green*, 176 Mont. 532, 536, 579 P.2d 1235, 1237 (1978)

7

(*Green 1978*)). "It has long been the rule of this Court that on appeal we will not put a District Court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which appellant made no objection." *Green 1978*, 176 Mont. at 536, 579 P.2d at 1237 (collecting cases). In addition, we will not reverse a decision by a district court on procedural grounds absent a showing of substantial prejudice by the complaining party. *Green v. Green*, 181 Mont. 285, 293, 593 P.2d 446, 451 (1979) (*Green 1979*).

¶16    In this case, Christopher made no objection to the IDRT process as conducted by the District Court below. Christopher affirmed he knew about the IDRT process when questioned by the District Court, affirmed he understood the District Court would be asking the questions at the hearing, and fully participated in the IDRT hearing.[1] There are not grounds to reverse the District Court when Christopher both acquiesced to and participated in the procedure employed by the court, without objection. *Green 1978*, 176 Mont. at 536, 579 P.2d at 1237. Furthermore, Christopher has not demonstrated substantial prejudice by having an IDRT rather than a formal hearing. *Green 1979*, 181 Mont. at 293, 593 P.2d at 451. While Christopher complains that the District Court did not instruct the parties "at the time of the hearing that they were able to present evidence or have an expert witness testify," a court is also not required to explain how a trial works to a party during a formal proceeding. In fact, the IDRT process makes the admission of evidence much easier than it would be in a formal proceeding because, in an IDRT, "[t]he court may admit any

---

[1] While not officially an IDRT hearing, the District Court's May 23, 2023 hearing in this case essentially mirrored the structure of an IDRT as the court asked questions of Christopher and Amanda in an informal manner, rather than following the traditional structure of a formal hearing. Christopher fully participated in this hearing, without objection, as well.

8

evidence a party offers, even if this evidence might be inadmissible under formal rules of evidence, and may determine how much weight to give any evidence." MUDCR 17(e). The final parenting plan hearing proceeding under the IDRT process did not substantially prejudice Christopher. It was also not an abuse of discretion under the District Court's inherent authority "to control trial administration[.]" *B Bar J Ranch, LLC v. Carlisle Wide Plank Floors, Inc.*, 2012 MT 246, ¶ 13, 366 Mont. 506, 288 P.3d 228.

¶17 Christopher also complains that he "attempted to provide expert witness testimony from a subpoenaed expert witness" during the hearing. Twice, Christopher mentioned there "should be" someone from Family Bridges "on the line" to testify. There is no record of anyone from Family Bridges actually being on the line during the hearing. In addition, though Christopher claims the Family Bridges witness was subpoenaed to testify, the simple fact is that they were not as Christopher's purported subpoenas were defective. M. R. Civ. P. 45(b) provides that "[a] subpoena may be served by any person who is not a party and is not less than 18 years of age." The returns of service for Christopher's subpoenas filed in the District Court show that Christopher—a party to the case— apparently personally served the subpoenas. This purported service is plainly prohibited by the Rules of Civil Procedure. M. R. Civ. P. 45(b). The District Court did not abuse its discretion by not stopping the hearing to take testimony from a non-subpoenaed witness who may or may not have actually been present.

¶18 We expect District Courts to follow the IDRT procedures as set forth in MUDCR 17. Though the District Court should have provided both parties with a more fulsome explanation of the particulars of the IDRT process and notified them of their ability

to opt out, Christopher did not object to the court's procedure below, fully participated in the IDRT hearing, and did not suffer substantial—or any—prejudice from the manner in which the District Court conducted the IDRT hearing. We find no abuse of discretion in the District Court's final parenting plan hearing as conducted under the IDRT process.

¶19 *2. Whether the District Court clearly abused its discretion in formulating the final parenting plan.*

¶20 Christopher also asserts the District Court failed to fully consider and apply the best interests of the child statutes in the final parenting plan. Amanda generally asserts the District Court's parenting plan is fair to both parents and in the best interests of F.L.F.L.K.

¶21 "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision. It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court." *Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715 (internal citation omitted).

¶22 In its February 7, 2024 Findings of Fact, Conclusions of Law and Order Following Hearing on Establishment of a Final Parenting Plan and Order on Petition for Contempt for Failure to Pay Child Support, the District Court specifically set forth its best interests analysis pursuant to the § 40-4-212, MCA, factors. On appeal, Christopher essentially asks this Court to reweigh the evidence because he feels the District Court did not give enough weight to § 40-4-212(l), MCA, which concerns "whether the child has frequent and continuing contact with both parents," or § 40-4-219(a)(iv), MCA, where a court is to

consider whether "one parent has willfully and consistently: (A) refused to allow the child to have any contact with the other parent; or (B) attempted to frustrate or deny contact with the child by the other parent." We decline to do so as "[i]t is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court." *In re Parenting of B.K.*, 2018 MT 217, ¶ 17, 392 Mont. 426, 425 P.3d 703.

¶23 In this case, the District Court heard Christopher's complaints that Amanda had frustrated his contact with F.L.F.L.K. due to a restraining order she had against him—one which was ultimately overturned on appeal by the North Dakota Supreme Court. *See Anderson v. Lamm*, 2023 ND 249, 999 N.W.2d 627. The District Court was also very consistent, from the first hearing in this case, that it believed it was in the best interests of F.L.F.L.K. to have gradually more time with Christopher with the goal of "fifty-fifty" parenting time, rather than following Christopher's plan of immediate fifty-fifty parenting time. Certainly, a reasonable course of action with a nursing infant who had only been cared for by Amanda up to that point. The District Court fashioned a parenting plan which set out to accomplish this goal by increasing Christopher's parenting time every month, set forth its reasoning as to each of the § 40-4-212, MCA, best interests factors in its Findings and Conclusions, and committed no abuse of discretion—let alone a clear abuse of discretion—in its parenting plan decision.

## CONCLUSION

¶24 While the District Court should have completely followed MUDCR 17 and informed the parties of their right to not consent to the IDRT process and proceed to a

11

formal hearing instead, Christopher suffered no prejudice from the court's procedural error. As to the IDRT hearing itself, the manner in which it was conducted was not an abuse of the District Court's discretion. In addition, the District Court's formulation of the final parenting plan was not a clear abuse of discretion.

¶25    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:


/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE