FILED

May 5 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0555

DA 14-0555

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 121

IN RE THE MARRIAGE OF:

MATTHEW J. SAMPLEY,

      Petitioner and Appellant,

  and

MICHELLE DENISE SAMPLEY,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 14-526
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Benjamin J. LaBeau, LaBeau Law Firm, L.L.C.; Billings, Montana

      For Appellee:

            Martha J. Messex Casey, Hendrickson Law Firm, P.C.; Billings, Montana

Submitted on Briefs:  March 18, 2015
Decided:  May 5, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Matthew Sampley appeals from an order of the Montana Thirteenth Judicial District Court, Yellowstone County, dismissing for lack of jurisdiction the parenting and custody issues Matthew presented in his petition for dissolution of marriage.  We affirm.

## ISSUES

¶2      We review the following issues:

*1.  Did the District Court err by refusing to hold a hearing prior to issuing its order?*

*2.  Did the District Court err by deciding that it lacked jurisdiction over the parenting and custody issues?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Matthew and Michelle Sampley were married on January 23, 2010, in Alberta, Canada.  In October 2010, they moved to Alaska, where their son, Cael, was born in 2011.  Michelle and Matthew moved to Washington in October 2011 and then to Billings, Montana during the end of September 2013.

¶4      In October 2013, Michelle and Cael travelled to British Columbia, Canada to stay with Michelle's parents.  They were scheduled to return to Montana on November 1, 2013.  After Michelle's father was diagnosed with cancer, Michelle and Cael extended their stay until the end of December 2013.  Matthew visited Michelle and Cael in Canada for five days in November and for ten days in December.  During Matthew's December visit, Michelle told Matthew that she and Cael would stay in Canada through March 2014.  In February 2014, Michelle travelled to Billings to retrieve her and Cael's personal

2

belongings. She removed these items without Matthew's knowledge and returned to Canada.

¶5 Matthew filed a petition for dissolution with the Yellowstone County District Court on May 29, 2014. Matthew's petition, in addition to requesting dissolution of his marriage with Michelle, asked the District Court to resolve matters of Cael's parenting and custody. Michelle responded to Matthew's petition on July 16, 2014, filing a response and moving to dismiss all matters related to parenting and custody. In a brief in support of her motion, Michelle argued that the District Court lacked jurisdiction over parenting and custody matters. On August 14, 2014, after Matthew filed a response brief and Michelle filed a reply, the District Court granted Michelle's motion. It decided that Montana was not Cael's "home state" for the purposes of § 40-7-201, MCA, and that it lacked jurisdiction over parenting and custody matters for this reason. Matthew appeals from this order.

## STANDARDS OF REVIEW

¶6 We review for correctness a district court's interpretation and application of statutes. *In re Myrland*, 2010 MT 286, ¶ 11, 359 Mont. 1, 248 P.3d 290. We review decisions left to the discretion of a district court for abuse of discretion. *In re Guardianship of H.O.*, 2014 MT 285, ¶ 7, 376 Mont. 519, 337 P.3d 91. A district court's determination of whether it lacks subject matter jurisdiction is a conclusion of law, which we review for correctness. *In re Marriage of Buck*, 2014 MT 344, ¶ 12, 377 Mont. 393, 340 P.3d 546. Our review of whether a party was afforded due process is plenary. *In re Marriage of Cini*, 2011 MT 295, ¶ 15, 363 Mont. 1, 266 P.3d 1257.

3

## DISCUSSION

¶7 *1. Did the District Court err by refusing to hold a hearing prior to issuing its order?*

¶8 Matthew argues that he was deprived of the opportunity for a hearing in violation of Montana statute and due process. We disagree.

¶9 The District Court was not required to hold a hearing before dismissing the matter for lack of jurisdiction. Whether to hold a hearing is a matter left to the discretion of the district court, according to Mont. Unif. Dist. Ct. R. 2(c). Where there is no dispute of material fact, we have allowed district courts to resolve M. R. Civ. P. 12(b) motions without a hearing. *General Constructors, Inc. v. Chewculator, Inc.*, 2001 MT 54, ¶¶ 37-40, 304 Mont. 319, 21 P.3d 604, *overruled on other grounds by In re Estate of Big Spring*, 2011 MT 109, ¶ 45, 360 Mont. 370, 255 P.3d 121; *cf. Richards v. Cnty. of Missoula*, 2009 MT 453, ¶ 26, 354 Mont. 334, 223 P.3d 878 (holding that a hearing was not necessary on a motion for summary judgment because it "would not have added anything to the proceedings."). The District Court did not abuse its discretion in this case because there was ample evidence, based on the affidavits and other filings of the parties, upon which it could base its subject matter jurisdiction decision, and because there was no dispute between the parties concerning any material facts.

¶10 Despite Matthew's contention otherwise, M. R. Civ. P. 12(i) does not require a different conclusion. M. R. Civ. P. 12(i) states that "[i]f a party so moves, any defense listed in Rule 12(b)(1)-(7) . . . must be heard and decided before trial unless the court orders a deferral until trial." Matthew takes this to mean that an oral hearing is required

4

before resolution of a Rule 12(b)(1) motion, if either party requests a hearing. This is incorrect. M. R. Civ. P. 12(i) does not require a court to hold an oral hearing before resolving an M. R. Civ. P. 12(b) motion, regardless of whether a party requests it.

¶11 M. R. Civ. P. 12(i) controls the schedule of a proceeding. It controls the order in which a district court must resolve the issues presented to it. It requires, upon the motion of a party, resolution of certain matters before a trial on the merits. *See* 2 James WM. Moore, *Moore's Federal Practice* § 12.50, at 12-145 (3d ed. 2015) (discussing Fed. R. Civ. P. 12(i), which is identical to M. R. Civ. P. 12(i)); 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1373, at 278-90 (3d ed. 2010) (discussing the former Fed. R. Civ. P. 12(d), which is substantially similar to M. R. Civ. P. 12(i)). However, it does not require a district court to conduct an oral hearing before resolving such preliminary matters. Although it requires a court to "hear" the preliminary matter before trial, it does not require an oral "hearing." Based on Unif. Dist. Ct. R. 2(c), a district court may, in its discretion, "hear" the matter based upon affidavits and other filings of the parties alone.

¶12 This conclusion comports with our treatment of the virtually identical predecessor to M. R. Civ. P. 12(i), which was codified prior to 2011 at M. R. Civ. P. 12(d). It also comports with other courts' treatment of the identical federal rules, upon which M. R. Civ. P. 12(i) and the former M. R. Civ. P. 12(d) were based. Committee Notes to M. R. Civ. P. 12, at 1232-33 (2014 Annotations); Compiler's Comments to M. R. Civ. P. 12(e), at 686 (2010 Annotations). In *General Constructors, Inc.*, we held that a district court did not err by dismissing the case for lack of subject matter jurisdiction without a

5

preliminary hearing. *General Constructors, Inc.*, ¶¶ 37-40. Interpreting the former M. R. Civ. P. 12(d), we reasoned that there were no "material jurisdictional facts" in dispute and that "even if a court presumed all allegations made by [the plaintiff] were true, a Montana court could not assume subject matter jurisdiction." *General Constructors, Inc.*, ¶¶ 38-39. Similarly, interpreting F. R. Civ. P. 12(i), federal courts have decided that Rule 12(b) motions can be resolved on the basis of affidavits and other documentary matter and that, regardless of whether it is requested by a party, oral testimony is only required in particular circumstances, such as where there are disputed questions of fact or where the decision may turn on issues of credibility. *E.g., Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (holding that courts may decide a motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone or may conduct an evidentiary hearing); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362-65 (1st Cir. 2001) (holding that courts have broad authority to hold evidentiary hearings but are not required to in order to determine their own jurisdiction); *see* Moore, *supra*, § 12.50, at 12-146; Wright, Miller & Kane, *supra*, § 1373, at 288-89.

¶13 Whether to hold a hearing on Michelle's M. R. Civ. P. 12(b)(1) motion was a matter of discretion for the District Court. The material jurisdictional facts in this case were presented in affidavits and the pleadings, and the District Court did not abuse its discretion by refusing to hold a hearing.

¶14 Furthermore, the District Court did not fail to afford Matthew due process by refusing to hold a hearing. As Matthew correctly notes, a parent's right to the care and custody of his or her child is a constitutionally protected liberty interest. *A.W.S. v. A.W.*,

6

2014 MT 322, ¶ 16, 377 Mont. 234, 339 P.3d 414; *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). He also correctly notes that due process requires notice and the opportunity to be heard before governmental deprivation of such a liberty interest. *Steab v. Luna*, 2010 MT 125, ¶ 22, 356 Mont. 372, 233 P.3d 351. However, even if we assume that the District Court failed to provide Matthew with the opportunity to be heard by not holding a hearing, Matthew was not deprived of due process. The District Court made no decision affecting Matthew's right to the care and custody of his child. Matthew has not been deprived of any liberty interest. Indeed, the District Court specifically decided that it did not have the power to decide any matters related to Matthew's custody of Cael. The District Court's decision will not foreclose Matthew from pursuing matters related to the custody of Cael in a court that can properly exercise jurisdiction. *See Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267 (a judgment has preclusive effect only as to the claims a party has had the opportunity to litigate). Matthew has not been deprived of life, liberty, or property without due process of law.

¶15 *2. Did the District Court err by deciding that it lacked jurisdiction over the parenting and custody issues?*

¶16 Both parties agree that, pursuant to the Montana Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Montana courts can only exercise jurisdiction over parenting and custody issues if Montana is the "home state" of the child whose parenting and custody is at issue. *See* §§ 40-7-101 and -201, MCA; *Stephens v. Fourth Judicial Dist. Court*, 2006 MT 21, ¶ 13, 331 Mont. 40, 128 P.3d 1026. They also

7

agree that Montana is a child's "home state" only if that child has at some point "lived in" Montana for at least six months. *See* § 40-7-103(7), MCA; *Stephens*, ¶¶ 13, 16. While Matthew acknowledges that Cael has not ever been present in Montana for a six-month period, he argues that Cael has "lived in" Montana such that Montana courts can exercise jurisdiction. Citing § 40-7-103(7), MCA, he contends that for the purposes of the UCCJEA, time "lived in" Montana includes periods of "temporary absence" from the State. He argues that Cael was present in Montana during September 2013 and then was "temporarily absent" from October 2014 through at least March 2014. For this reason, he argues that Cael "lived in" Montana for over six months and that the District Court erred when it decided that Montana is not Cael's home state.

¶17 Michelle responds that this Court cannot consider whether Cael's absence was temporary since this argument was raised for the first time on appeal. In the alternative, she argues that Cael's absence was not temporary and that the District Court was correct to decide that Montana is not Cael's home state.

¶18 We are able to consider Matthew's argument that Cael's absence from Montana was "temporary." Although it is well settled that we will not consider new arguments or legal theories raised for the first time on appeal, *In re the Parenting of N.S.*, 2011 MT 98, ¶ 36, 360 Mont. 288, 253 P.3d 863, Matthew's argument that Cael's absence was a "temporary absence" is not a new argument or theory. While neither party used the term "temporary absence," this issue was disputed before the District Court. The parties discussed the length and character of Cael's trip to Canada, Michelle's intention in taking him to Canada, and the trip's effect on Cael's connection to Montana. Michelle argued

8

that the absence meant that Cael did not live in Montana for an amount of time sufficient for Montana to exercise jurisdiction over parenting and custody matters, while Matthew argued otherwise. While not labeled as such, these arguments were about whether or not Cael's absence was "temporary." Thus, Matthew's argument is not new on appeal.

¶19 Nevertheless, we agree with Michelle's argument that the District Court was correct when it determined that Montana lacks jurisdiction over matters relating to Cael's parenting and custody. We agree with Matthew that a period of "temporary absence" is included in the time "lived in" Montana for the purposes of determining whether Montana is a child's home state. Section 40-7-103(7), MCA. However, we do not agree that Cael "lived in" Montana for six months, even if we include the amount of time Cael was temporarily absent from the State. More specifically, we hold that Cael's absence was temporary through February 2014 at the latest. Since Cael moved to Montana for the first time in late September 2013, this means that there was no six-month period of time that Cael "lived in" Montana.

¶20 This decision turns on whether Cael's absence from Montana was "temporary" and, if so, how long the absence remained temporary. However, we have not yet considered what exactly constitutes a temporary absence and what distinguishes a temporary absence from an absence that will not be included as time a child lived in Montana for the purposes of § 40-7-103(7), MCA. The UCCJEA does not define the term, and the plain language of the UCCJEA provides limited help in determining what constitutes a "temporary absence." The metes and bounds of the term are not clear on the

9

face of § 40-7-103(7), MCA, nor does the statute specify what factors courts should consider when determining whether an absence from Montana is temporary.

¶21 When applying a statute and when presented with such statutory ambiguity, this Court looks beyond the bare statutory language and attempts to give effect to the legislature's intent. *In re K.M.G.*, 2010 MT 81, ¶ 26, 356 Mont. 91, 229 P.3d 1227. We consider legislative history in such cases, and when considering uniform laws, such as the UCCJEA, we also consider the decisions of other jurisdictions that have interpreted the same statutory language. *E.g.*, *Stoican v. Wagner (In re Estate of Lawlor)*, 2015 MT 54, ¶ 23, 378 Mont. 281, 343 P.3d 577; *see Buck*, ¶ 21. Both sources are helpful here.

¶22 Forty-nine states have adopted the UCCJEA, and several courts have considered what constitutes a "temporary absence" for the purposes of determining a child's home state. Despite the UCCJEA's purpose of uniform state treatment of child custody jurisdiction issues, these jurisdictions' treatment of the term has been far from uniform. *See, e.g.*, *Norris v. Norris*, No. S-15439, ___ P.3d ___, 2015 Alas. LEXIS 29, 12 n.22 (Alaska Mar. 27, 2015); *S.M. v. A.S.*, 938 S.W.2d 910, 917-18 (Ct. App. Mo. 1997). Instead, three primary approaches have developed. Some courts have considered only the duration of an absence in determining whether the absence is temporary. *E.g.*, *In re Marriage of Schoeffel*, 644 N.E.2d 827, 829 (Ill. App. Ct. 4th Dist. 1994). Others have considered the intention of a child's parent, parents, or other caregivers. *E.g.*, *Ogawa v. Ogawa*, 221 P.3d 699, 704 (Nev. 2009) (absence was temporary because parents intended it to be a three-month vacation). Still others have adopted a "totality of the circumstances" test, considering factors like the parties' living arrangement, the location

10

of the child's doctor, receipt of public benefits, and frequency of relocation, in addition to duration and intention. *E.g. Norris*, 2015 Alas. LEXIS 29, 12-15; *In re A.W.*, 94 A.3d 1161, 1167-68 (Vt. 2014); *Carter v. Carter*, 758 N.W.2d 1, 8-9 (Neb. 2008); *Chick v. Chick*, 596 S.E.2d 303, 308 (N.C. Ct. App. 2004). We are not particularly persuaded by the reasoning of these courts to adopt any of these approaches. The decisions we have reviewed provide little rationale for why any particular approach best gives effect to legislatures' intents in adopting the UCCJEA.

¶23 However, the legislative history of Montana's UCCJEA provides support for a totality of the circumstances approach in at least some instances. In 1977, Montana adopted the Uniform Child Custody Jurisdiction Act (UCCJA). Ch. 537, L. 1977; *In re Marriage of Stoneman*, 2003 MT 25, ¶ 12, 314 Mont. 139, 64 P.3d 997. Prior to the Act's enactment by all 50 states, states' disparate and conflicting exercise of jurisdiction over child custody matters encouraged forum shopping, self-help, and re-litigation of custody matters in never ending disputes. UCCJA Prefatory Note, 9 U.L.A. 261, 263-65 (1999). The purpose of the UCCJA was to eliminate such problems by establishing uniform criteria for states' exercise of jurisdiction over child custody matters. Section 40-8-102, MCA (1995); UCCJA § 1, 9 U.L.A. at 271; *Stoneman*, ¶ 12. The drafters of the UCCJA adopted what was meant to be a bright-line rule: a state could exercise jurisdiction over a custody matter if it was the child's "home state." Section 40-7-201, MCA; UCCJA § 3 Comment, 9 U.L.A. at 308-09. The drafters stated that the six-month requirement for establishing a home state was based on a "reasonable assumption of fact." Specifically, that "[m]ost American children are integrated into an American

community after living there six months" and, consequently, that this period "seem[s] to provide a reasonable criterion for identifying the established home." UCCJA § 3 Comment, 9 U.L.A. at 308 (quoting Leonard G. Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795, 818 (1964)).

¶24 Following revision of the UCCJA and the resulting creation of the UCCJEA, Montana adopted the UCCJEA. Ch. 91, L. 1999; *Stoneman*, ¶ 14. The drafters of the UCCJEA recognized that inconsistencies among state interpretation and enforcement of the UCCJA had hindered the purposes of the UCCJA. They made revisions to the uniform law to help further the UCCJA's goals. UCCJEA Prefatory Note, 9 U.L.A. 649, 650-54 (1999). The definition of "home state" was left substantially unchanged between the UCCJA and UCCJEA. UCCJEA § 201 Comment, 9 U.L.A. at 671-72; *compare* § 40-7-103(7), MCA, *with* § 40-7-103(5), MCA (1997). Thus, it is reasonable to impute the comments and purposes behind the definition in the UCCJA to the UCCJEA's definition. This is especially true since Montana did not repeal the UCCJA definition and then enact the language of the UCCJEA, but instead amended the language of the UCCJA. *See* Sec. 1-14, Ch. 91, L. 1999. The language and legislative history of that amendment do not seem to express an intent to alter the purpose or meaning of the "home state" requirement. *See* Sec. 4. Ch. 91, L. 1999.

¶25 Thus, the Montana Legislature's intent in adopting the UCCJA and UCCJEA definition of "home state" was to create a bright-line rule based on the assumptions that a state is the established home of a child after the child is integrated into a community of the state and that such integration usually occurs after six months of living in a

12

community. In light of this intent, adopting a definition of "temporary absence" that would render these assumptions unreasonable would defeat the Legislature's purpose for adopting its definition of "home state." We, therefore, conclude that an absence is not temporary if the character of the absence would make it unreasonable to assume that a child would integrate into a community of Montana during the portions of the six-month period when the child is not absent from the state.[1]

¶26 A totality of the circumstance approach makes the most sense for determining whether an absence renders the integration assumption unreasonable. We cannot say that a single factor will be dispositive to this determination in all cases; neither the intentions and expectations of the parents nor the duration of the absence will control every situation. Instead, the continued reasonableness of the integration assumption in light of an absence is best considered in the context of the totality of the circumstances surrounding the absence.

¶27 While such a standard is somewhat more subjective than the bright-line, six-month rule imposed by the legislature; and while such subjectivity interferes with the UCCJEA's goal of uniform application of child custody jurisdiction laws between states; requiring temporary absences to be measured against the purposes and underlying assumptions of the intended bright-line rule in an objective test seems to provide a rule that is as precise as possible. At the very least, we think that providing such a standard

---

[1] We do not decide whether the contrapositive is true. As the stated conclusion is sufficient to resolve the present appeal, we need not consider whether all absences that do not render the integration assumption unreasonable are necessarily "temporary."

13

will better promote uniform treatment of child custody jurisdiction than the similar standardless tests of other states.

¶28 In this case, the District Court did not err when it decided that Montana is not Cael's home state. Cael did not "live in" Montana for six months because he was present in Montana for one month at most and his "temporary" absence lasted at most another four months. Michelle and Cael moved to Billings at the end of September 2013. They remained there for somewhere between four days and a month, depending on whether Michelle or Matthew is to be believed. Cael has not returned to Billings or Montana since. If this absence from Montana was ever "temporary" it ceased being "temporary" in February 2014, at the latest. Cael has been absent from Montana since leaving in September 2013, and there is no evidence that the parties have attempted to make a home for Cael in Montana. Indeed, all of Cael's possessions were removed from Montana during February 2014. Moreover, by Matthew's admission, Michelle informed Matthew during February 2014 that she no longer intended to return with Cael to Billings. Thus, as of February 2014, Michelle and Cael had lived in Billings for a month or less, were living in Canada, had moved all of their possessions to Canada, and had no intention to return to Billings. It is unreasonable to assume that most children would integrate into the Billings community despite the circumstances accruing in the present case as of February 2014. Based on its characteristics, therefore, Cael's absence was not temporary as of February 2014 at the latest. Combining his periods of physical presence in and temporary absence from Montana, Cael "lived in" Montana for the purposes of §§ 40-7-103(7) and -201, MCA, from the end of September 2013 through February 2014

14

at the latest. Cael, therefore, "lived in" Montana for no more than five months. This is short of the six months required for Montana to exercise jurisdiction. Section 40-7-201, MCA. For this reason, the District Court did not err when it decided that Cael's home state "may very well be Washington, may very well be Canada, but . . . is not Montana under the factual circumstances." Affirmed.

## CONCLUSION

¶29 The District Court did not err by resolving Michelle's M. R. Civ. P. 12(b)(1) motion before holding a hearing, despite Matthew's request for a hearing. The District Court also did not err when it determined that it lacked subject matter jurisdiction over the child custody matters in this case. We affirm the District Court's order dismissing the matters related to Cael's custody.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

15