FILED

05/07/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0431

DA 23-0431

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 94N

JULIUS A. WILSON and ANITA M. ANGELO,

      Plaintiffs and Appellants,

    v.

DOMINICA E. STAMPER; Personal Representative
of the Estate of Pricilla A. Graham and THERESA
A. PRESLEY and RONALD PRESLEY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. CDV-2022-313
                  Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Nick LeTang, Passamani & LeTang, PLLC, Helena, Montana

        For Appellees:

                William J. Levine, Marra, Evenson & Levine, P.C., Great Falls, Montana
                (for Theresa A. and Ronald Presley)

                Chris Walker, Silverman Law Office, PLLC, Helena, Montana
                (for Dominica E. Stamper)

                        Submitted on Briefs:  April 10, 2024

                                    Decided:  May 7, 2024

Filed:

_____
                      Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellants, Julius Wilson and Anita Angelo, appeal from July 19, 2023 Order on Motions to Consolidate or Dismiss for Lack of Subject Matter Jurisdiction and for Summary Judgment, issued by the First Judicial District Court, Lewis and Clark County. We affirm in part, reverse in part, and remand.

¶3 This case arises from a probate dispute over real property owned by Priscilla Graham's estate. Priscilla Graham died on November 27, 2020. Her estate consisted of her house at 5705 Shannon Ct. in Helena and assorted accounts and personal property. Her Will left her estate in equal shares to Dominica Stamper, Salvatore Angelo, Anita Angelo, Theresa Presley, and Julius Wilson. Graham was Dominica, Salvatore, Anita, and Theresa's aunt and Julius's great aunt. Anita Angelo is Julius Wilson's mother. Appellee Ronald Presley is married to Appellee Theresa Presley.

¶4 Pursuant to Graham's Will, Dominica Stamper was appointed personal representative (PR) of Graham's estate in First Judicial District Court, Lewis and Clark County, Cause No. DP 2020-199 (the Probate Action). At the time of Graham's passing, Julius was residing in Graham's house. He and his mother, Anita, indicated a desire to purchase the home from the estate. On April 7, 2021, the PR obtained a comparable market

2

analysis (CMA) from realtor Joseph Mueller valuing the home at $350,000 and noting proceeds would be reduced to $329,000 if a realtor was used and the estate incurred the standard 6% realtor's commission. On April 19, 2021, the PR also obtained appraisals from Moore Appraisals valuing the home at $305,000 at the time of Graham's death with a current value of $330,000. The PR offered to sell the home to Appellants for $330,000. Although Anita was initially open to this offer, Appellants determined the price was too high. On May 5, 2021, Appellants offered to purchase the home for $305,000, which the PR rejected. On July 13, 2021, the PR again offered to sell Appellants the home for $330,000. Appellants did not accept this offer and again countered at $305,000. Thereafter, on August 13, 2021, the PR entered into an agreement to sell the home to Theresa and Ronald Presley for $330,000. The agreement specifically provided closing would not occur until Julius vacated the home.

¶5      Following completion of an eviction action in the Probate Action, Julius vacated the home, and sale of the home to the Presleys closed on December 14, 2021. At closing, rather than pay $330,000 and then receive $66,000 of that back for Theresa's 20% distribution for which she was entitled under Graham's Will, the Presleys paid $264,000 in cash obtained through a mortgage loan. The proceeds received paid to the estate from the mortgage loan were then distributed equally among the four remaining devisees under Graham's Will. The Presleys' mortgage did not require that they occupy the home. Approximately 7 months later, the Presleys sold the home to a third party for $400,000, incurring $24,000 in realtor commission in the transaction. As such, the Presleys made approximately $46,000 on the home flip.

3

¶6    On April 12, 2022, Appellants commenced a separate civil suit, outside the Probate Action, against the PR and Presleys (the Civil Action). Appellants alleged the PR breached her fiduciary duties to Appellants when she sold the property to the Presleys, committed negligence in selling the property to the Presleys, and that the PR and the Presleys committed fraud and bad faith when they worked together to accomplish the sale of the property to the Presleys for less than its fair market value. On September 20, 2022, the PR sought summary judgment on all claims as well as attorney fees. On December 19, 2022, the PR sought to consolidate the Civil Action with the Probate Action or, alternatively, dismiss the Civil Action for lack of subject matter jurisdiction.

¶7    On July 19, 2023, the District Court granted the PR's motion for summary judgment on the fraud and bad faith claims and dismissed the breach of fiduciary duty and negligence claims for lack of subject matter jurisdiction. The District Court also held the PR was entitled to her attorney's fees under the equitable exception to the American Rule pursuant to *Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978).[1]

¶8    The district court's determination of whether it lacks subject matter jurisdiction is a conclusion of law, which we review for correctness. *In re Marriage of Sampley*, 2015 MT

---

[1] In *Foy*, David Anderson, third-party plaintiff, filed a declaratory action against Karen Eggan, a third-party defendant, seeking to bring her into the lawsuit when she had asserted no claim against him and had no intention of doing so. The trial court dismissed this complaint and granted Eggan her attorney fees, determining the complaint violated both the letter and the spirit of the law—as, although the Montana Rules of Civil Procedure were designed to provide complete adjudication of all claims, they were not designed to encourage or promote litigation. This Court upheld the attorney fees—"If equity is to be done in a situation such as this, the attorney fee must be sustained"—explaining that the district court has power to grant relief under its equity power and cautioned, "[t]his is meant to establish no precedent, but must be determined on a case by case basis." *Foy*, 176 Mont. at 511, 580 P.2d at 116-17.

121, ¶ 6, 379 Mont. 131, 347 P.3d 1281. We review a district court's ruling on motions for summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. *Chapman v. Maxwell*, 2014 MT 35, ¶ 7, 374 Mont. 12, 322 P.3d 1029. We review a district court's decision to award or deny attorney fees and costs under the equitable exception first announced in *Foy* for an abuse of discretion. *Egan Slough Cmty. v. Flathead Cnty. Bd. of Cnty. Comm'rs*, 2022 MT 57, ¶ 17, 408 Mont. 81, 506 P.3d 996.

¶9 Appellants argue the District Court erred when it determined it did not have subject matter jurisdiction to adjudicate the breach of fiduciary duty and negligence claims. Appellants assert Article VII, Section 4, of the Montana Constitution and § 3-5-302(1), MCA, vest courts with plenary power over all civil and probate matters, whereas this Court's case law creates a "legal fiction" by pigeoning district courts acting under the Montana Uniform Probate Code (MTUPC)—"sitting in probate"—with limited jurisdiction with only the limited or special powers provided by the MTUPC. Appellants further assert the District Court's error was created by the legislature's decision to adopt stock UPC provisions which they assert is only appropriate in judicial systems where courts are divided into separate divisions based on subject matter and this Court's "legal fiction" that district courts "sit in probate" when administering probate matters. Appellants assert the "incongruency in Montana's current jurisprudence will only perpetuate confusion amongst Montana courts and practitioners about where jurisdiction appropriately resides on matters tangentially related to probate estates."

¶10 Contrarily, the PR and Presleys assert the District Court correctly determined it lacked subject matter jurisdiction when it dismissed the breach of fiduciary duty and

5

negligence claims. They contend the Appellants' argument that they should be able to file a separate action related to a probate, even while a probate action is pending, ignores how the legislature chose to implement Montana's constitutional provision vesting district courts with jurisdiction over civil matters in law and equity. The PR asserts the MTUPC is congruous with Montana's Constitution and § 3-5-302, MCA, and assert the exclusivity language in § 72-3-111(1), MCA—"The district court has exclusive jurisdiction of all probate matters"—vests our district courts with exclusive jurisdiction to hear probate matters while excluding Montana's other courts (e.g., the justices courts, municipal courts, the water court, etc.) from doing so. They contend Appellants' advocacy for completely new law on probate jurisdiction risks inconsistent results, would lead to confusion, and is "a tacit acknowledgement that their position lacks merit."

¶11 We have repeatedly held that a district court sitting in probate has limited, not general, jurisdiction as set forth in § 72-1-202, MCA. *In re Estate of Scott*, 2023 MT 97, ¶ 10, 412 Mont. 303, 529 P.3d 867; *In re Estate of Cooney*, 2019 MT 293, ¶ 6, 398 Mont. 166, 454 P.3d 1190. A district court sitting in probate only has the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to complete exercise of those expressly conferred. *In re Estate of Scott*, ¶ 10; *In re Estate of Cooney*, ¶ 7. We have not seen the significant confusion of practitioners or judges concerning the limited subject matter jurisdiction of district courts sitting in probate asserted by Appellants. While we appreciate Appellants' advocacy "to create a more workable—and less conflicting—model on how Montana district courts should administer

6

adversarial proceedings related to estates[,]" we decline Appellants' demand that we "buck" our precedent in this area. From our review of the breach of fiduciary duty and negligence claims, they fall squarely under § 72-3-1001, MCA, as "the final settlement and distribution of the estate"[2] such that the District Court correctly dismissed them for lack of subject matter jurisdiction.

¶12 Next, Appellants assert the District Court committed reversible error in granting the PR's motion for summary judgment on the fraud and bad faith claims. As to the fraud claim, the District Court noted Appellants did not plead a specific type of fraud claim—actual or constructive. Further, the court concluded Appellants did not set forth any facts establishing that the PR or Presleys made any representations to Appellants, nor that Appellants had relied on any representations by the PR or Presleys made to them. The sole allegation made by Appellants was that Appellees asserted to their mortgage company that they would reside in the home after their purchase of it. We agree with the District Court that, even if true, it does not involve any representation to Appellants—thus, Appellants did not plead facts sufficient to make a prima facie case of fraud. The District Court did not err in granting the PR's motion for summary judgment on Appellants' fraud claim.

¶13 As to Appellants' bad faith claim, the District Court concluded Appellants failed to provide any legal basis for their general claim of bad faith other than to assert the PR

---

[2] If an excess distribution had been made to Theresa because she had purchased the home for less than fair market value as asserted by Appellants, such could have been addressed in the final settlement and distribution of the estate by making appropriate adjustments from other estate assets.

7

worked with the Presleys to sell the home to them for under the fair market value and the PR and the Presleys knew the estate would be deprived of the full fair market value of the property. In support, Appellants provide text messages by the PR and the Presleys which purportedly demonstrate an intent to deprive Appellants and the estate of value. From our review of the record, even if Appellants established such intent, the uncontested facts demonstrate the estate and its devisees were not deprived of the home's fair market value. At the time the estate entered into the buy-sell agreement with the Presleys, the Moore appraisal indicated a value of $330,000 and the Mueller CMA indicated a market value, after deduction of realtor fees, of $329,000 which would be incurred if the home were listed for sale and sold to a third party.[3] Thus, the undisputed evidence established the market value of the home to be $329,000-$330,000[4] at the time the PR entered the agreement to sell the home to Presleys.[5] While it appears, from the Presleys' subsequent sale of the home, that the home appreciated in value somewhat between execution of the buy-sell agreement and closing while the estate was in litigation with Julius to evict him from the property, the undisputed facts demonstrate the PR entered into the agreement for sale of the house to the Presleys for its market value. Thus, regardless of any ill-intent the PR or

---

[3] With sale to the Presleys, the PR would not use the services of a realtor and would not incur the approximate 6% realtor fee.

[4] Which would result in distribution to each devisee of approximately $66,000.

[5] Upon sale of the home, each devisee received approximately $66,000—albeit Theresa Presley received her distribution as a reduction of the sale price with waiver of receipt of any of the remaining net proceeds from the sale of the home.

Presleys may have had, the estate and its heirs were not damaged by it. As such, we affirm the District Court's grant of summary judgment to the PR on this claim.

¶14 Appellants argue the District Court abused its discretion by awarding the PR attorney fees under the equitable exception in *Foy* for fees incurred defending in the Civil Action. "Montana generally follows the American Rule that a party may not recover attorney fees in a civil action absent a specific contractual or statutory provision." *JRN Holdings, LLC v. Dearborn Meadows Land Owners Ass'n*, 2021 MT 204, ¶ 48, 405 Mont. 200, 493 P.3d 340 (citation omitted). "A court, under its equity powers, may award attorney fees to make an injured party whole in the limited circumstance 'where a party has been forced to defend against a wholly frivolous or malicious action.'" *Egan Slough*, ¶ 85 (quoting *Braach v. Graybeal*, 1999 MT 234, ¶ 9, 296 Mont. 138, 988 P.2d 761). "A court must determine such awards 'on a case-by-case basis.'" *Egan Slough*, ¶ 85 (quoting *Braach*, ¶ 9). Here, the District Court determined Appellants' action to be "wholly frivolous and malicious." The District Court reasoned the fraud action to be frivolous because the Appellants "knew or reasonably should have known they could not prove the elements necessary to prevail" and the bad faith claim was frivolous as Appellants "did not provide a legal basis for 'bad faith' as an independent cause of action."

¶15 Appellants assert their claims were not wholly frivolous and malicious and that the District Court erred in bifurcating their claims—separating them into claims the court determined it had subject matter jurisdiction over and those it did not—and then looking at only the subset of claims it believed it had subject matter jurisdiction over to determine whether attorney fees should be awarded under the *Foy* exception. Appellants argue that

9

affirming the award of attorney fees in this instance will have a chilling effect on attorneys and their clients in bringing good faith causes of action during the infancy of litigation and prior to the benefit of discovery for fear courts will punish them after considering only a subset of their claims. Contrarily, Appellees assert the District Court's grant of attorney fees was well-reasoned and should be affirmed.

¶16    This case is different than *Foy* and more aligned with *Egan Slough*.[6] From our review of the record, the Appellants' claims were not wholly frivolous or malicious. Appellants did not seek to compel third parties, with no intention of filing suit, to be brought into a lawsuit and forced to defend. Appellants brought claims and set forth good faith arguments that past precedent should be overruled advancing a different interpretation of the interplay between courts of general jurisdiction and those sitting in probate. We agree that to award fees under the circumstances here would chill good faith efforts to advance legal arguments and causes seeking to overturn prior precedent. As such, we

---

[6] *Egan Slough* involved litigation related to the expansion of an agricultural zoning district through citizen initiative to include the area where Montana Artesian Water Company (Montana Artesian) was developing a large-scale water bottling plant. The Egan Slough Community (Egan Slough) filed its original complaint seeking mandamus—based on the County's alleged inaction in enforcing Egan Slough zoning regulations—and declaratory relief. As the litigation progressed, Egan Slough filed a motion to withdraw its motion for summary judgment on the mandamus claim and to dismiss that count. Montana Artesian later sought attorney fees related to defending against the mandamus claim, arguing Egan Slough pursued the claim knowing it did not meet the requisite showing for mandamus. The District Court denied Montana Artesian's motion for attorney fees explaining that during a portion of the litigation there was a broad question whether the County would enforce or acknowledge the Egan Slough zoning regulations and that it was unknown whether the mandamus application prompted the County to issue its zoning enforcement decision. Under these facts, the District Court determined an award of attorney fees under the equitable exception in *Foy* was not appropriate. *See Egan Slough*, ¶¶ 86-89.

conclude the District Court erred in awarding the PR attorney fees under the *Foy* exception and remand to the District Court to strike the award of attorney fees to the PR.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed in part, reversed in part, and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE