FILED

04/21/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0712

DA 25-0712

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 83

IN RE THE PARENTING OF R.A.A.,

A Minor Child

JONATHAN EDWARD ALLEN,

Petitioner and Appellant,

and

PETRONELLA GERLINE
(VAN OOSTEROM) ALLEN,

Respondent and Appellee.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DR-25-137
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jonathan Edward Allen, Self-Represented, Eureka, Montana

For Appellee:

Bradley J. Jones, R. Spencer Bradford, Bulman Jones & Cook, PLLC,
Missoula, Montana

Submitted on Briefs: March 24, 2026
Decided: April 21, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Jonathan Edward Allen (Father) appeals from an order issued by the Nineteenth Judicial District Court, Lincoln County, dated September 12, 2025, which denied his emergency motion for temporary custody and dismissed his petition for a permanent parenting plan without prejudice. The District Court concluded that Montana was no longer the home state of R.A.A. because she had not lived in Montana for more than two years and noted that under Montana law it must recognize and enforce a child custody determination made in a foreign country. We affirm.

¶2 The parties raise several issues on appeal; however, we restate the dispositive issue as follows:

> *Whether the District Court correctly determined that it did not have jurisdiction to establish a parenting plan because Montana is not R.A.A.'s "home state."*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Father and Petronella Gerline (Van Oosterom) Allen (Mother) married in 2009 in Colorado. Father is a United States citizen and Mother is a dual citizen of the United States and the Netherlands. R.A.A. was born in 2015. Around 2020, the parties moved from Colorado to Montana where R.A.A. received homeschool education. Father travels frequently for business, including abroad, and is away for extended periods of time. R.A.A. resided and attended public school in the Netherlands from June 2022 until May 2023. Mother returned to the United States with R.A.A. in an apparent effort to reconcile the parties' marriage. On August 11, 2023, Mother and R.A.A. left Montana to return to the Netherlands without the knowledge or consent of Father. Mother filed a petition for a

2

divorce and custody with the District Court of Central Netherlands (Netherlands District Court) on February 13, 2024, six months after residing in the Netherlands. Nearly one year later, on January 17, 2025, Father filed a petition in the District Court of The Hague for the return of R.A.A. invoking the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention). The District Court of The Hague denied Father's petition on March 18, 2025, concluding that although the minor child was wrongfully removed from the United States, the one-year automatic return period had passed and since then R.A.A. had become settled in her new environment in the Netherlands. The Court of Appeal of The Hague dismissed Father's appeal on May 1, 2025.[1] Father has since filed a report with the Federal Bureau of Investigation and alleges that there is an ongoing criminal investigation against Mother for alleged child abduction. For this reason, Mother fears returning to the United States.

¶4 In September of 2025, Father filed an Emergency Motion for Temporary Custody and Petition for Permanent Parenting Plan in the Nineteenth Judicial District Court (Montana District Court). The Montana District Court dismissed Father's petition and motion based on its conclusion that it did not have jurisdiction to overturn the decision of the Court of Appeal of The Hague and that Montana is no longer the "home state" of R.A.A. since she had not resided in Montana for more than two years before Father filed this action in the Montana District Court. Father filed his notice of appeal of the Montana District Court's order with this Court in early October. On November 25, 2025, the parties attended

---

[1] Neither party has provided a copy of the decision by the District Court or Court of Appeal of The Hague; however, neither party disputes the legal conclusions of these courts.

a hearing before the Netherlands District Court where both parties were represented by counsel. Father appeared remotely and with the assistance of an interpreter. On January 29, 2026, Father filed a motion with this Court to supplement the record with uncertified copies of the Decision by the Netherlands District Court, dated January 20, 2026, in both English and Dutch. On March 24, 2026, Mother filed with this Court a Notice of Registering of Foreign Judgment and a certified copy of that Decision, which is substantively equivalent to the one filed by Father in its reasoning and conclusion that the Netherlands District Court has jurisdiction to decide legal and physical custody of R.A.A. but does not have jurisdiction to dissolve the marriage between the parties.[2] The Netherlands District Court reasoned that Mother had not established her habitual residence in the Netherlands because she was uncertain about returning to the United States as the parties were attempting to reconcile their marriage prior to her filing for divorce. In contrast, the Netherlands District Court determined that R.A.A. had established her habitual residence in the Netherlands since she had consistently attended the same primary school for a period spanning approximately four years, was doing well in school, had multiple friends and participated in extracurricular activities, and formed meaningful bonds with her maternal family in the Netherlands. The Netherlands District Court considered

---

[2] On April 16, 2026, Father filed with this Court a Notice of Contest of Registration of Foreign Judgment stating his intention to appeal the Decision by the Netherlands District Court and arguing that the Netherlands District Court's determination that it could exercise child custody jurisdiction over R.A.A. was not in substantial conformity with the Uniform Child Custody and Enforcement Act (UCCJEA). The issue of whether the Decision of the Netherlands District Court is in substantial conformity with the UCCJEA is not on appeal and involves a separate proceeding to enforce a foreign judgment.

Father's argument that homeschool education would provide R.A.A. with greater flexibility than public education in the Netherlands to accommodate an international child custody arrangement but nonetheless determined that it was in the best interest of R.A.A. for Mother to have full legal custody and granted Father parenting time during R.A.A.'s school holidays with the possibility of an additional two weeks of special leave from school.

## STANDARD OF REVIEW

¶5 Jurisdiction to make an initial child custody determination is established by statute. Section 40-7-201, MCA. "We review a district court's interpretation and application of statutes for correctness and will not disturb a district court's findings of fact unless they are clearly erroneous." *In re A.V.R.*, 2025 MT 162, ¶ 9, 423 Mont. 174, 573 P.3d 305.

## DISCUSSION

¶6 *Whether the District Court correctly determined that it did not have jurisdiction to establish a parenting plan because Montana is not R.A.A.'s "home state."*

¶7 Father, appearing pro se, understandably stresses the importance of the determination by The Hague District Court that R.A.A. was wrongfully removed from the United States and asserts that R.A.A.'s habitual residence in the United States cannot be lost by wrongful removal. Father offers several legal propositions in support of his arguments but provides minimal legal authority in support and misapprehends the meaning of Montana's child custody jurisdiction statutes. We first discuss the Hague Convention and applicable federal law before turning to Montana's child custody jurisdiction statutes.

5

¶8     Under the United States Constitution, treaties entered into by the United States constitute part of the supreme law of the land. U.S. Const. art. VI, § 2. The United States ratified the Hague Convention and Congress enacted the International Child Abduction Remedies Act (ICARA) to implement this treaty. *Monasky v. Taglieri*, 589 U.S. 68, 71-72, 140 S. Ct. 719, 723 (2020). The Netherlands is also a signatory to the Hague Convention. Hague Conference on Private Int'l Law, Convention of 25 October 1980 on the Civil Aspects of Int'l Child Abduction, Status Table, https://perma.cc/V65R-7XQ5. The purpose of the Hague Convention is "[t]o address the problem of international child abductions during domestic disputes." *Monasky*, 589 U.S. at 71, 140 S. Ct. at 723 (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4, 134 S. Ct. 1224, 1228 (2014)). Under the Hague Convention, "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky*, 589 U.S at 70-71, 140 S. Ct. at 722-23. Article XII of The Hague Convention provides that when "a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith" and that "even where the proceedings have been commenced after the expiration of the period of one year" the concerned authority "shall also order the return of the child, *unless it is demonstrated that the child is now settled in its new environment*." Convention on the Civil Aspects of Int'l Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (emphasis added). "The Convention's return requirement is a 'provisional' remedy that fixes the forum for custody proceedings." *Monasky*, 589 U.S at 72, 140 S. Ct. at 723 (citation omitted). Thus,

6

the purpose of the Hague Convention is to determine the appropriate forum for international child custody matters, not to establish a child custody arrangement.

¶9 Montana adopted the Uniform Child Custody Act (UCCJA) in 1977 "to promote uniformity and discourage jurisdictional conflict." *In re A.H.S.*, 2025 MT 57, ¶ 11, 421 Mont. 196, 571 P.3d 1002. Prior to adoption of the UCCJA by all 50 states, "the disparate and conflicting exercise of jurisdiction over child custody matters encouraged re-litigation, forum shopping, and self-help" measures. *In re A.H.S.*, ¶ 11. The purpose of the UCCJA was to provide uniform criteria for the exercise of a state's jurisdiction over child custody disputes. *In re A.H.S.*, ¶ 11. The UCCJA was revised to further advance the Act's purpose and to address inconsistent interpretation and enforcement of the UCCJA among the states, resulting in the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), which Montana enacted in 1999. *In re A.H.S.*, ¶ 11. Thus, the UCCJEA provides a stable and predictable framework for a Montana district court to determine when it can exercise jurisdiction over a child custody dispute.

¶10 Under the UCCJEA, priority is given to "home-state jurisdiction for child custody proceedings, under which a state has jurisdiction if it is the child's 'home state.'" *In re A.H.S.*, ¶ 13. Section 40-7-201(1), MCA, provides "the exclusive jurisdictional basis for making a child custody determination by a court of this state." Section 40-7-201(2), MCA. Except in circumstances not relevant here:

> a court of this state has jurisdiction to make an initial child custody determination only if:

(a) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

Section 40-7-201(1), MCA. An "initial determination" is "the first child custody determination concerning a particular child." Section 40-7-103(8), MCA. A child's "home state" is "the state in which a child lived with a parent or a person acting as parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." Section 40-7-103(7), MCA. "Thus, the Montana Legislature's intent in adopting the UCCJA and UCCJEA definition of 'home state' was to create a bright-line rule based on the assumptions that a state is the established home of a child after the child is integrated into a community of the state and that such integration usually occurs after six months of living in a community." *In re Marriage of Sampley*, 2015 MT 121, ¶ 25, 379 Mont. 131, 347 P.3d 1281. Except in the case of temporary emergency jurisdiction:

a court of this state may not exercise its jurisdiction . . . if at the time of commencement of the proceeding a proceeding concerning the custody of the child had been previously commenced in a court of another state having jurisdiction substantially in conformity with this chapter unless the proceeding has been terminated or stayed by the court of the other state because a court of this state is a more convenient forum under 40-7-108.

Section 40-7-107(1), MCA. The UCCJEA explicitly contemplates international application of its criteria for determining jurisdiction over child custody matters and provides that Montana courts "shall treat a foreign country as if it were a state of the United States for the purpose of applying" child custody jurisdiction and enforcement statutes.[3]

---

[3] In dictum we have mentioned that a foreign country was not a "state" for the purposes of

Section 40-7-136, MCA. Indeed, "a court of this state may enforce an order for the return of the child that was made under the [Hague Convention] as if it were a child custody determination." Section 40-7-302, MCA. Montana courts have a statutory duty to "recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with" the UCCJEA. Section 40-7-303, MCA.

¶11 Here, Montana is no longer R.A.A.'s "home state" as defined by the UCCJEA. Father filed his petition and motion for emergency custody in early September 2025, nearly 25 months after R.A.A. was last in Montana. Father did not file a Hague petition for the return of R.A.A. until approximately a year and a half after R.A.A. was removed from the United States. It is unclear why Father delayed filing a Hague petition for so long. However, the Netherlands District Court suggests that the parties were negotiating travel and parenting arrangements for R.A.A during this time. Nonetheless, during that delay R.A.A. became settled in her new environment in the Netherlands as the District Court of The Hague concluded and the Court of Appeal of The Hague affirmed. She regularly attended and did well in public school, became involved in extracurricular activities, and formed meaningful friendships and familial bonds within her new community in the Netherlands. Meanwhile, Montana lost home-state jurisdiction over R.A.A. since she had not resided here for the preceding six months before Father filed for custody in the Montana

UCCJEA. *In re A.H.S.*, ¶ 15. We now clarify that under ordinary circumstances Montana courts should treat a foreign country as if it were a state of the United States for the purposes of applying the UCCJEA according to the plain language of the statute.

District Court. Section 40-7-201, MCA. Father's collateral attack in Montana courts on the judgment of a court of another jurisdiction is the very kind of re-litigation that the UCCJEA seeks to discourage.

¶12 Father points to no legal authority whereby a finding that a minor child was wrongfully taken from her place of habitual residence, yet now settled in her new environment, overrides a judgment of another jurisdiction that it may properly exercise child custody jurisdiction. Father does refer to a statute involving unjustifiable conduct by a party in a parenting dispute, however, that statute deals with the *assertion of jurisdiction* by a court of this state, not another jurisdiction's authority to decide child custody. Section 40-7-109, MCA, provides:

> (1) Except as otherwise provided in 40-7-204, if *a court of this state* has jurisdiction under this chapter because a person invoking the jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise jurisdiction unless:
>
> > (a) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
> >
> > (b) a court of the state otherwise having jurisdiction under 40-7-201 through 40-7-203 determines that this state is a more appropriate forum under 40-7-108; or
> >
> > (c) no other state would have jurisdiction under 40-7-201 through 40-7-203.

(Emphasis added.) Section 40-7-109, MCA, is intended to prohibit parties from availing themselves of Montana jurisdiction in child custody disputes when a party engages in unjustifiable conduct which results in Montana putatively obtaining home-state jurisdiction. Indeed, § 40-7-109, MCA, is modeled after § 208 of the model UCCJEA.

10

Unif. Child Custody Jurisdiction & Enf't Act § 208 (Unif. L. Comm'n 1997). Although this Court is sensitive to the burdens of participating in an international tribunal, we nonetheless affirm the Montana District Court and, thus, Father must pursue his parenting interests in the Netherlands District Court. Father waited approximately a year and a half before taking legal action to return R.A.A. to Montana and as a result Montana lost child custody jurisdiction over R.A.A.

¶13 Accordingly, the District Court correctly denied Father's emergency motion for temporary custody and return of an abducted child and properly determined that it did not have child custody jurisdiction since Montana is no longer R.A.A.'s "home state" as defined by the UCCJEA.

¶14 We briefly address Mother's contention that the District Court's dismissal without prejudice is not appealable and that she should be awarded reasonable attorney fees for this appeal. Matters involving families and parenting are frequently complex and changing. Accordingly, a dismissal without prejudice does not render the District Court's order interlocutory; rather, it is designed to allow the court to consider circumstances that may have changed. The District Court's order was final for purposes of appeal because it constituted a conclusive determination that Montana lacked subject-matter jurisdiction at the time of commencement of the Montana proceeding. We also conclude that sanctions against Father are not appropriate as Father understandably availed himself of the jurisdiction of courts in Montana to seek redress for the District Court of The Hague's

conclusion that R.A.A. was wrongfully removed from the United States but is nonetheless now settled in her new environment in the Netherlands.

## CONCLUSION

¶15 The District Court correctly determined that it did not have child custody jurisdiction over R.A.A. since Montana is no longer her "home state" and properly noted that Montana courts have a duty to recognize and enforce valid foreign judgments registered in the state.

¶16 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA